Effie HENRY et al.

v.

Henry C. WHITE, Individually and as Commissioner of the Connecticut State Department of Welfare.

Civ. No. 15322.

United States District Court, D. Connecticut.

May 2, 1973.

Charles J. Tuohy, Norwalk Legal Services, South Norwalk, Conn., for plaintiffs.

Francis J. MacGregor, Asst. Atty. Gen., East Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

NEWMAN, District Judge.

This is an action to enjoin the closing of the Connecticut Department of Welfare's subdistrict office in Norwalk, Connecticut, and the removal of this office to Bridgeport, Connecticut, some twelve miles away. Plaintiffs, welfare recipients previously served through the Norwalk office, allege that the closing of this office denies them equal protection under the Fourteenth Amendment and deprives them of their statutory rights under the Social Security Act, 42 U.S.C. § 301 et seq. Defendant has moved to dismiss the action for failure to state a claim upon which relief can be granted.

The Norwalk subdistrict office was closed during October, 1972. Clients previously served by this office are now required to obtain such services as are provided by the State Welfare Department at the Bridgeport office, either in person—a three-dollar bus ride from Norwalk—or by phone—normally a twenty-cent toll call.[1] Although one full-time caseworker is currently stationed by the Department in Norwalk, working in an office made available by a private charitable organization, the parties agree that plaintiffs and the class they seek to represent must rely all but exclusively on the Bridgeport office for social services, information, and adjustments, both major and minor, with regard to the payment of benefits. Plaintiffs assert this results in a severe restriction on the availability of services. Their affidavits state that it often takes twenty or more calls to make telephone contact with the Bridgeport office; that aid in obtaining housing in the Norwalk area is apparently completely unavailable; and that at least two recipients were unable to attend fair hearings held in Bridgeport despite their requests to have the hearings transferred to Norwalk, because of the distance involved.[2]

The complaint alleges that with one exception, no Connecticut city of equal or greater size, and having an equal or greater number of poor residents, is without a welfare office and that of the fourteen cities with such offices, seven have smaller total and poverty populations. Plaintiffs urge that the state interest asserted by defendant is insufficient to justify this apparently irrational discrimination. Plaintiffs argue from these allegations that the closing of the Norwalk office unconstitutionally discriminates against Norwalk area welfare recipients because they have arbitrarily been selected to have their access to statutorily mandated services significantly impaired.

In addition to their constitutional claim, plaintiffs also contend that the closing violates 42 U.S.C. §§ 302(a)(1), 602(a)(1), 1202(a)(1), and 1382(a)(1) which require that state plans for the provision of various categories of federally assisted aid "shall be in effect in all political subdivisions of the state"; plaintiffs claim that these statutory provisions mandate a uniform level of benefits—both money and services—throughout the state. Finally, plaintiffs rely

---

1. For some Norwalk office clients a toll-free phone line to the Bridgeport office is available, although clients living outside of Norwalk proper cannot use this line and must pay the full tariff. Since the cost to recipients throughout the state of getting to and from welfare offices is not included in their budgets, no adjustment to the amount of benefits paid plaintiffs has been made to offset the additional expense which the closing of the Norwalk office entails for this group.

2. Fair hearings are now given in Norwalk for those requesting them there; however, the inability of clients to attend fair hearings in Bridgeport prior to this change indicates the general difficulty in obtaining services in person at the Bridgeport office.

on Department of Health, Education, and Welfare (HEW) regulations implementing the Social Security Act, in particular 45 C.F.R. § 250.120(a) and 45 C.F.R. § 205.130(b) for the proposition that local offices must be provided where needed "on a basis consistent with the equitable treatment of individuals in similar circumstances throughout the state." 45 C.F.R. § 205.130(b).

Whether the complaint withstands defendant's motion to dismiss turns on the substantiality of plaintiffs' constitutional claim, for if this claim does not state a cause of action for which 28 U.S.C. § 1343(3) provides jurisdiction, pendent jurisdiction may not be exercised on the statutory claims. See e. g., Almenares v. Wyman, 453 F.2d 1075, 1082 (2d Cir.), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Hagans v. Wyman, 471 F.2d 347 (2d Cir., 1973).

At first glance, a state administrator's decision to effect economies by closing one of many local offices would seem immune from any judicial scrutiny, much less a district court's consideration of whether such action violates the Constitution. But whenever governmental action results in different treatment of people similarly situated, there is always the possibility that a claim under the equal protection clause can be established. The only question to be decided on this motion is whether plaintiffs' claim is so devoid of merit that the suit can be dismissed, or whether the defendant must make some showing, either at trial or possibly on a motion for summary judgment, that in fact no violation of the equal protection clause has occurred. This determination depends on the approach to be taken in assessing equal protection claims, a matter which Circuit Judge Timbers has only recently charitably characterized as "uncertain." Boraas v. Village of Belle Terre, 476 F.2d 806, 826 (2d Cir., 1973).

The uncertainty extends to two aspects of the equal protection issue: the standard to be applied when the merits of the claim are assessed and the nature of the material to be relied upon in determining whether the applicable standard has been met. Within the Second Circuit recent cases have suggested that the appropriate standard is somewhat higher than the traditional rational relationship test. Boraas v. Village of Belle Terre, 476 F.2d 806 (2d Cir., 1973); City of New York v. Richardson, 473 F.2d 923 (2d Cir., 1973); Aguayo v. Richardson, 473 F.2d 1090 (2d Cir., 1973); Green v. Waterford Board of Education, 473 F.2d 629 (2d Cir., 1973); but see Hagans v. Wyman, supra. While some Supreme Court decisions offer hints in this direction in some contexts, Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973); Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172–176, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), more recent cases suggest that the rational relationship test is alive and well, San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 36 L.Ed.2d 282 (1973).

Uncertainty as to the standard may be the result of uncertainty as to the technique to be used in determining whether the standard has been met. The choice on this latter problem is between hypothesizing both a state interest that could rationally be considered legitimate and a theory on which the challenged classification could rationally be considered to advance the state interest, or requiring some indication that the possible state interest and the means of advancing it were in fact what the state had in mind. The highwater mark of the hypothesizing approach was McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), where the Court stated that "a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." More recently, the Court seems to have moved away from looking for conceivably rational state in-

terests towards a search for what it has twice called an "articulated" legitimate state interest. San Antonio School District v. Rodriguez, *supra,* 411 U.S. 1, 93 S.Ct. 1278; McGinnis v. Royster, *supra,* at 1062 of 410 U.S., 93 S.Ct. 1055. Apparently, such an interest is to be sought not from the imagination of counsel, but from the relevant materials illuminating the actual purpose of the challenged action. See Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L. Ed.2d 231 (1971).

Where, as here, the challenged action is administrative, rather than legislative, it seems especially appropriate to require some indication that an actual, as distinguished from a hypothetical, legitimate state interest is in fact being advanced. Although such an indication might in some circumstances be found in materials properly considered on a motion to dismiss, the insufficiency of the plaintiffs' equal protection claim is not apparent at this point in the litigation.

The defendant has impaired the access of a particular class of welfare recipients to needed services. Defendant gives no intimation that this group of beneficiaries is in any way more able to do without the local provision of these services than other beneficiaries similarly situated throughout the state. Indeed the presence of welfare offices in every other city of comparable size (save one) and in numerous smaller cities suggests that the state has recognized the need for local offices in areas of concentrated population such as Norwalk.

■ The sole justification offered for the closing by defendant is that it promotes administrative efficiency. Even if this state interest is considered legitimate in the circumstances of this case, but see City of New York v. Richardson, *supra,* it is not apparent from the papers thus far submitted that the selection of Norwalk for an office closing bears the requisite rational relationship to this purpose. Not every consolidation of offices is a rational way of promoting efficiency. If every tenth office on an alphabetical list were selected for closing, the resulting limitation of service to those affected would be arbitrary, unlike situations, such as the lottery draft, where random selection has a positive benefit. The plaintiffs have pleaded that the decision to select Norwalk for an office closing is lacking in rationality. While the defendant may subsequently be able to show the rationality of his decision with ease, the plaintiffs' claim is sufficient to defeat a motion to dismiss.

Defendant's reliance on Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1972), and Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), is misplaced. In each, the Court found that the state might reasonably believe that the class adversely affected by the statutory classifications there at issue was better able to sustain the adverse impact produced by the classification than other classes. In *Dandridge,* where plaintiffs challenged a Maryland regulation which placed a ceiling of the amount of AFDC aid to a family regardless of its size, the Court referred to "the greater ability of large families—because of the inherent economies of scale—to accommodate their needs to diminished per capita payments," 397 U.S. at 479–480, 90 S.Ct. at 1159. In *Jefferson,* where plaintiffs, AFDC recipients, challenged a Texas regulation under which AFDC recipients received a smaller percentage of their "standard of need" than recipients in other aid categories, the Court stated:

Since budgetary constraints do not allow the payment of the full standard of need for all welfare recipients, the State may have concluded that the aged and infirm are the least able of the categorical grant recipients to bear the hardships of an inadequate standard of living. While different policy judgments are of course possible, it is not irrational for the State to believe that the young are more adaptable than the sick and elderly, especially because the latter have less

hope of improving their situation in the years remaining to them.

406 U.S. at 549, 92 S.Ct. at 1733. In the instant case, however, nothing in the circumstances of the Norwalk welfare recipients in any way suggests that they are better able to forego local provision of services than other welfare recipients. Hence the facial rationality which inhered in the Maryland and Texas regulations is lacking here.

Secondly, in both *Dandridge* and *Jefferson,* the Court, while citing the traditional rational relation test as stated in McGowan v. Maryland, *supra,* may well have applied a higher standard, for in each case the Court found substantial justification for the challenged classifications. In *Dandridge,* the Court, in accepting two state interests advanced by Maryland, stated:

> It is enough that a solid foundation for the regulation can be found in the State's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor.

397 U.S. at 486, 90 S.Ct. at 1162. In *Jefferson,* the Court found that the differentiation between AFDC and other aid categories was consistent with a strongly expressed Congressional intent:

> It is clear from the statutory framework that, although the four categories of public assistance found in the Social Security Act have certain common elements, the States were intended by Congress to keep their AFDC plans separate from plans under the other titles of the Act. A State is free to participate in one, several, or all of the categorical assistance programs, as it chooses.

406 U.S. at 546, 92 S.Ct. at 1731. Here, defendants offer no justification for the discrimination effected by the closing of the Norwalk office other than the nebulous interest in administrative efficiency, a state interest not relied upon in either *Dandridge* or *Jefferson.* Moreover, the statutory framework of the Social

Security Act and the regulations implementing it run counter to defendant's differentiation among similarly situated recipients. Thus, unless the substantive portions of *Dandridge* and *Jefferson* are completely ignored in favor of their recitation of the traditional *McGowan* formula, these decisions do not preclude the sufficiency of plaintiffs' claim under the Equal Protection Clause.

For these reasons, defendant's motion to dismiss is denied.