**Leonard ANDREWS et al.**

v.

**Nicholas NORTON, Individually and in his official capacity as Commissioner of the State of Connecticut Welfare Department, et al.**

**Civ. No. H–74–190.**

United States District Court,
D. Connecticut.

Nov. 19, 1974.

674

James C. Sturdevant, Tolland–Windham Legal Assistance, Rockville, Conn., Raymond J. Kelly, Tolland–Windham Legal Assistance, Willimantic, Conn., David B. Spanier, Legal Aid Society of Hartford, Hartford, Conn., Charles A. Pirro,, Fairfield County Legal Services, South Norwalk, Conn., for plaintiffs.

Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn., for defendants.

MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

BLUMENFELD, District Judge.

This is an action to enjoin the defendants, state welfare officials, from continuing to require welfare recipients to report to State Welfare Department offices for periodic AFDC redetermination interviews without reimbursing them for travel, day-care, or other expenses involved in making the required journey. The plaintiffs seek certification of a class, the convening of a three-judge court and a preliminary injunction pending final adjudication of the case on its merits.

## FACTS

At issue in this action is an emergency welfare regulation, § 17–2–31 (1974) which has been in effect since May 28, 1974[1] (published at 36 Conn.L.J., Oct. 22, 1974 at 19). The regulation provides that the "AFDC personal interview provided for . . . redetermination of eligibility, is a face-to-face interview in the district office of the department." Under emergency § 17–2–29 such interviews are to take place "[n]o less frequently than ninety (90) days after the effective date of award and every six (6) months thereafter . . . ." There are only a limited number of district offices in the state at which such interviews are conducted[2] with the attendant result that some welfare recipients must travel further distances at greater expense and incon-

venience than others. In addition, plaintiffs allege that persons who live at a greater distance are more likely to incur baby-sitting or day-care expenses during the period when they are traveling to and from welfare offices. Welfare recipients are not reimbursed for these expenses.

At the time of recertification the recipients are notified by mail of the date and location of their interview. Emergency regulation § 17–2–31(a) governs the issue of notice and the allowable excuses for failure to attend the interview:

"The supervising relative shall receive adequate notice of date, time and location of the interview. He shall complete and bring with him to the interview forms sent to him and documents needed for verification. No appointment will be rescheduled unless the supervising relative, as verified by a doctor's statement, is so ill as to be hospitalized or otherwise incapacitated; or if the supervising relative is employed and the employer refuses to give time off."

Should a recipient fail to keep a scheduled interview appointment, that situation is governed by § 17–2–31(2):

"A supervising relative failing to keep the scheduled appointment will be sent appropriate notice of proposed discontinuance, including the right to request an evidentiary hearing within the next ten (10) days from the date of mailing the notice. If such supervising relative voluntarily appears for

1. Conn.Gen.Stat.Ann. § 4–168 (Supp.1974) establishes the procedure by which agency regulations are adopted in Connecticut. Under subsection (a) the agency must publish a notice in the Connecticut Law Journal of its intent to adopt a regulation at least 20 days in advance of the intended action. This provides the public with an opportunity to respond to the proposal. In addition, no regulation may be adopted until approved by the Attorney General and a standing regulation review committee of the legislature. Subsection (b) provides a procedure by which a regulation may be adopted on an emergency basis for a period of not more than 180 days pending the outcome of the sub-

section (a) procedure. Under subsection (b) the emergency provision is available whenever an agency "finds that an imminent peril to the public health, safety, or welfare requires adoption . . . ." In the case of the regulations involved in this action, the Department of Welfare has made such a determination and thus it is currently operating under the provisions of emergency regulations.

2. The locations of these offices are Hartford, Manchester, New Haven, Bridgeport, Norwich, Waterbury, Middletown, Stamford, Danbury, Torrington, Bristol, New Britain and Meriden.

an interview thereafter, his redetermination process will be initiated. A rescheduled date may also be granted. Failure by the supervising relative to keep this appointment will result in discontinuance. If the supervising relative shows for the appointment but does not have all verified information, he will be given another notice of proposed discontinuance. A rescheduled date within ten (10) days will be given; failure to furnish all necessary verification at the next appointment will result in discontinuance."

The named plaintiffs are all individuals who live a considerable distance but less than 25 miles [3] outside of the cities in which their recertifications were to take place. It is unnecessary at this juncture to set out in detail the specifics of each of their cases. However, some discussion is necessary to indicate the dimensions of the discrimination complained of.

Leonard Andrews receives $64.00 per month of AFDC benefits. He lives two miles outside of Willimantic and was ordered by the Welfare Department to report to the Norwich welfare office for his redetermination interview. It was established at the hearing that Willimantic is 18 miles from Norwich. At the time of the hearing on this motion in June 1974, there was only one bus a week running between Willimantic and Norwich. The cost of a round trip ticket on that bus was $2.60. Mr. Andrews was able to arrange for his interview to take place on the day of the week on which the bus ran, but stated that he was unable to afford the cost of the ticket. It was also established that beginning July 1, there would be daily buses operating between those two towns. Mr. Andrews also complained that he would have to incur the expense of providing a baby sitter for his five- and six-year-old children while he traveled to Norwich. However, upon further examination he testified that he had several older children who would be available to take care of their younger brothers and sisters.

Plaintiff Vivian Feltault resides in Enfield and was ordered to attend a recertification interview in Manchester. She has several young children and would apparently not be able to leave them alone, but rather would have to bring them to the interview or obtain the services of a baby sitter. There is no direct bus line between Enfield and Manchester; travel between these points involves changing buses at Hartford. The total distance of this route is approximately 52 miles round trip. Because of the difficulty of making bus connections, it is apparent that Mrs. Feltault would have to devote the better part of a day in traveling to and from the site of the interview. However, in cross-examination she did concede that her children could ride free on the buses and she would thus be willing to take them with her to Manchester.

▮ The other named plaintiffs did not testify at the hearing, but their situations, as set out in the complaint, are basically variations on those of plaintiffs Andrews and Feltault. In no case does the trip required of the plaintiffs exceed that involved in Mrs. Feltault's case. A number of the plaintiffs are residents of South Norwalk and are required to travel to Bridgeport for their interviews, a total round trip distance of 36 miles. At the hearing it was established that there is hourly bus transportation between these two cities at a round trip cost of $3.10.[4]

▮ The plaintiffs in their complaint seek certification of a class for the purposes of maintaining this as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2). The proposed class

---

3. See note 7, infra.

4. After the hearing on the preliminary injunction, a number of motions to intervene were filed. None of the proposed intervenors present factual or legal issues different from those of the named plaintiffs. Acting under the discretion afforded it by Fed.R.Civ.P. 24(b), this Court denies the various motions to intervene.

is defined as "all present and future AFDC recipients in Connecticut who are required to report to State Welfare Department Offices for AFDC redetermination interviews pursuant to written departmental policy, Manual Vol. I, Index No. 2200, paras. 4 and 5, p. 2 [5] without affording said persons travel, day-care, or automobile expenses to and from said offices." (Plaintiffs' complaint ¶ 3). As all of the prerequisites for class certification are present, this will be treated as a class action.

## JURISDICTION

Plaintiffs seek to ground jurisdiction of this action on 28 U.S.C. § 1343(3).[6] They have presented for the Court's consideration a number of constitutional challenges to the Welfare Department's interview policy. Basically, they contend that the interview requirement invidiously discriminates against that class of persons who must incur expenditures for travel to the welfare offices for the redetermination interviews. Secondly, they challenge the practice on the basis that the state has made a conclusive presumption that welfare recipients receive enough welfare assistance to allow them to pay these added expenditures. Thirdly, they challenge the evidentiary hearing procedure which precedes the termination of welfare payments in this class of cases. They argue that such a hearing does not satisfy the requirements of due process as set out in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) because affected individuals are required to attend these hearings at the locations where the interviews themselves are scheduled to take place. It is not due process, they argue, to hold a hearing at a location which a person cannot, or can only with great difficulty, reach when the very reason why relief is to be terminated is his inability to attend an interview at that location.

In Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) the Supreme Court established the very minimal standards of merit which must be satisfied before a District Court may assume jurisdiction of a claim under 28 U.S.C. § 1343(3). Quoting from Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666–667, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the Court held that a claim could be dismissed for want of federal jurisdiction only if it were "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." Id. at 543, 94 S.Ct. at 777. With due regard, however, for the strictness of this standard, I conclude that each of the plaintiffs' constitutional claims is insubstantial.

### A. Equal Protection

Their first argument is grounded upon the equal protection clause of the Fourteenth Amendment. They contend that the defendants' action in conducting interviews at only a limited number of locations in the state has invidiously discriminated against those who live substantial distances from those few towns.[7] This

---

5. The plaintiffs were evidently unaware of the emergency regulations discussed above.

6. 28 U.S.C. § 1343(3) provides:
   "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person
   . . . .
   "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any

Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . ."

7. It was established at the hearing that the defendants have adopted an informal rule that in cases in which a welfare recipient must travel more than 25 miles (as measured by the most direct road connection) one way to the nearest district office, the Welfare Department will arrange for the interview to be conducted in the town in which the recipient lives. Between the dates

argument is foreclosed by two distinct lines of Supreme Court opinions.

First, on numerous occasions the Court has held that "[t]erritorial uniformity is not a constitutional requisite." Salburg v. Maryland, 346 U.S. 545, 552, 74 S.Ct. 280, 284, 98 L.Ed. 281 (1954); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Missouri v. Lewis, 101 U.S. 22, 25 L.Ed. 989 (1879). See United States ex rel. Buonoraba v. Commissioner of Correction, 316 F.Supp. 556, 564–565 (S.D.N.Y.1970); Contractors Ass'n. of Eastern Pa. v. Secretary of Labor, 311 F.Supp. 1002, 1010 (E.D.Pa.1970), aff'd, 442 F.2d 159 (3d Cir.), cert. denied 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed. 2d 95 (1971). Indeed, in Missouri v. Lewis, *supra*, the Court upheld as constitutional a Missouri statute and state constitutional provision which established different appellate procedures for different parts of the state. In so holding, the Court observed:

> "Where part of a State is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions,—trial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction of the powers of the State government if it could not, in its discretion, provide for these various exigencies." *Id.* 101 U.S. at 32, 25 L.Ed. 989.

Similarly, the state is free, as here, to establish its offices in those parts of the state where there are the greatest demands for its services. There can be no claim of unconstitutional treatment merely because the state has chosen to distinguish among its residents on the basis of geographical considerations.

Alternately, the plaintiffs focus not only upon the territorial discrimination per se, but the financial hardship which that discrimination imposes upon those who live considerable distances away from the towns in which recertification interviews are conducted because they must travel to those towns for interviews. In effect they argue that this neutral interview requirement is unconstitutional because it imposes a greater financial hardship upon some welfare recipients than upon others.

This argument is foreclosed by the Supreme Court's opinions in Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) and United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). In *Kras* the Court held there was no violation of equal protection in conditioning a discharge in bankruptcy upon the payment of a $50 filing fee. In *Ortwein* the Court arrived at a similar conclusion with respect to a $25 filing fee required of persons seeking review of adverse *welfare decisions* in the state's appellate courts despite the argument that this was a discrimination against the poor. The Court noted in both cases that in the area of economic and social welfare legislation, a state need only advance a rational justification for disparate treatment of its citizens. In both cases it found such a rational justification for the imposition of a small filing fee in the goal of offsetting the expenses of maintaining a court system for the benefit of its citizens. Thus, despite indications to the contrary in several opinions in this Circuit, City of New York v. Richardson, 473 F.2d 923, 932 (2d Cir. 1973); Henry v. White, 359 F.Supp. 969 (D.Conn.1973), it follows that the unwillingness of a state to increase the costs of providing services to its citizens is a legitimate, rational purpose which can justify discrimination resulting from state action in the area of social welfare legislation where no fundamental interests are involved.[8]

---

of June 4 and June 19, this was done in a total of 64 out of the 3,818 interviews that were conducted. Thus, the defendants' interview requirement only has an adverse impact upon persons who live less than 25 miles from a district welfare office.

8. Of course, a state cannot invoke this justification while acting in an arbitrary or

These cases are conclusive authority against this aspect of the plaintiffs' equal protection argument. The $25 filing fee involved in *Ortwein* certainly represented a greater barrier to the welfare applicant's ultimate ability to obtain assistance than does the interview requirement in the instant case. Yet even in *Ortwein,* the Court recognized as a rational justification for the discriminatory impact involved the interest of the state in minimizing the costs of operating its courts. *A fortiori* the state is free to establish welfare offices in only a limited number of locations in order to minimize the cost of administering its welfare program. The state's action "was so patently rational as to require no meaningful consideration." Hagans v. Lavine, 415 U.S. at 541, 94 S.Ct. at 1381. *See* Hill v. State of Michigan, 488 F.2d 609 (6th Cir. 1973); *see also* Ajello v. Schaffer, 349 F.Supp. 1168, 1174 (D.Conn.1972); Russo v. Shapiro, 309 F.Supp. 385, 392 (D. Conn.1969).

The conclusion that plaintiffs' claim is insubstantial is dictated not only by the decisions discussed above, but also by the inherently "implausible" quality of their argument. The logical consequences of that argument are extreme and uncontrollable. While it is true that the defendants have indirectly imposed a hardship upon some citizens which others do not have to bear to the same degree, it is also apparent that the state rarely takes any action without having an impact at least as great as that involved here. For example, a telephone call to the governor's office is considerably more expensive for the citizens of Stamford than for those residing in Hartford; yet the state may be charged with having created the disparity by locating the state capital in Hartford. Similarly, if a state cannot decide to restrict the number of towns in which wel-

fare interviews are conducted, it would also be clearly barred from making the same decision with regard to the location of its courts. By holding court in only a limited number of locations in the state, under the plaintiffs' theory, the state would be invidiously discriminating against those who must incur expenses in traveling to the courthouse to present their claims. If that were so, the state would either have to institute a circuit riding system or reimburse all individuals for travel expenses.

The absurdity of this position is apparent. Indeed, in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court stated in an analogous context:

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' San Antonio Independent School District v. Rodriquez, 411 U.S. 1, 24 [, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16] (1973), nor does it require the State to 'equalize economic conditions.' Griffin v. Illinois, *supra,* 351 U.S. [12], at 23 [, 76 S.Ct. 585, at 592, 100 L.Ed. 1480] (1956) (Frankfurter, J., concurring)." (Footnote omitted.)

It would be easy to spin out examples of other major structural governmental changes which would be mandated if the principle for which the plaintiffs argue were adopted. However, it is unnecessary to do so; the frivolousness of the claim is patent. When the state acts neutrally in establishing governmental offices in only a limited number of locations, there is no equal protection

---

capricious manner. Thus, serious questions would be raised if all of the district offices were located in one corner of the state, rather than distributed throughout the heavily populated areas. In such a case,

the policy might be held arbitrary and capricious even in the face of a contention that the state's goal was the minimization of administrative costs.

violation merely because some citizens must travel further distances than others to reach those offices. *See* Dublino v. New York State Department of Social Services, 348 F.Supp. 290, 298 (W.D.N.Y.1972), rev'd on other grounds, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

## B. *Irrebuttable Presumption*

■ The plaintiffs' second constitutional argument is even less substantial than the first. They assert that the state has violated their rights to due process by irrebuttably presuming that the flat grant award which plaintiffs' receive under the state's AFDC program includes components of need that would allow the plaintiffs to pay the transportation and child care expenses incurred by them in complying with the recertification policy.

In support of this argument they cite the Supreme Court's recent rulings in this area. Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, none of these cases are apposite to the instant case. Each involves a situation wherein the plaintiffs were held to have a right to demonstrate that they did not have the characteristics necessary to include them within a class of persons receiving disfavored treatment. For example, in *Vlandis* the state presumed that students attending a state college who had originally come from outside the state could never become residents of the state and thus qualify for reduced tuition rates. The Court held that such students had a right to prove that they had become bona fide residents. Similarly, in *LaFleur* the Court held that pregnant teachers could not automatically be required to take a leave of absence after the fourth or fifth month of their term, but rather had the right to prove that they were physically capable of continuing to teach.

In this case, however, the defendants have not sought to include the plaintiffs in a disfavored category without providing them the opportunity to challenge that inclusion. In fact, it is apparent that the defendants have created no category and have made no presumptions regarding plaintiffs or anyone else. They have merely established an interview requirement that applies to all welfare beneficiaries. They do not presume that the AFDC flat grant award makes provision for payment of the attendant travel and child care expenses. They have merely decided not to provide assistance to cover that element of expense, a decision which they have the indisputable discretion to make. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

■ In couching the interview requirement in terms of an irrebuttable presumption, the plaintiffs have made a transparent attempt to cloak an insubstantial equal protection argument in due process garb. In light of the Supreme Court's recent invocation of the "irrebuttable presumption" doctrine, it is appealing to litigants to attempt to frame their claims within this doctrinal rubric. However, as this case demonstrates, not every governmental action involves a conclusive presumption proscribed by this emerging doctrine.

## C. *Procedural Due Process*

■ Finally, citing Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970) the plaintiffs argue that they are entitled to a meaningful due process hearing before their welfare benefits are terminated for failure to appear at their interviews. They concede that under emergency welfare regulation §§ 17–2–31(d)(2), 17–2–33 (published at 36 Conn.L.J., Oct. 22, 1974 at 18–19) they are entitled to an evidentiary hearing at the district offices before termination of benefits. They com-

plain that such hearings are meaningless as they would be unable to attend them for the same reasons that would prevent their attendance at the recertification interviews. This somewhat novel argument is, of course, dependent upon a finding that it is unreasonable to require the plaintiffs to report to the district offices in the first instance. As such a requirement is patently not unreasonable, this argument is also insubstantial for the purposes of federal jurisdiction.

In the absence of any non-insubstantial constitutional claim, this Court lacks the jurisdiction to consider the plaintiffs' pendent statutory claims. In addition, it follows that a three-judge court need not be convened under 28 U.S.C. § 2281 (1970) to consider the plaintiffs' claims. The standards for convening a three-judge panel are the same as those articulated in Hagans v. Lavine, *supra*. *See* Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

Accordingly, this action is dismissed for lack of jurisdiction.

So ordered.