**Leonard ANDREWS et al.,
Plaintiffs-Appellants,**

v.

**Edward W. MAHER, Successor to Nicholas Norton, Individually and as Commissioner of Welfare, State of Connecticut, et al., Defendants-Appellees.**

**No. 20, Docket 75–7029.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 1975.

Decided Oct. 24, 1975.

James C. Sturdevant, Rockville, Conn. (Tolland-Windham Legal Assistance Program, Inc., Mary Ann Conklin, Rockville, Conn., Charles A. Pirro, III, Fairfield County Legal Services, Inc., South Norwalk, Conn., David B. Spanier, Legal Aid Society of Hartford County, Hartford, Conn., on the brief), for plaintiffs-appellants.

Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., on the brief), for defendants-appellees.

Before MOORE, FEINBERG and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Leonard Andrews and six other welfare recipients, on behalf of themselves and all persons similarly situated, appeal from a decision of the United States District Court for the District of Connecticut, dismissing their action under 42 U.S.C. § 1983 against defendants, the Commissioner and Deputy Commissioner of the Connecticut Department of Welfare. Plaintiffs sought to enjoin defendants from requiring welfare recipients to report for periodic eligibility interviews without reimbursing them for their travel and other expenses in journeying to the nearest district office. In a thorough opinion, reported at 385 F.Supp. 672, Judge M. Joseph Blumenfeld held the district court had no jurisdiction over plaintiffs' claims. We affirm.

We will not recount the facts at great length here, preferring to refer the reader to the opinion of the district court for a fuller statement. It is enough to note that the policy under attack provides that within 90 days after an award of Aid to Families with Dependent Children (AFDC) benefits and at least every six months thereafter, a recipient's eligibility must be redetermined in "a face-to-face interview in the district office" of the Department of Welfare.[1] Since there are only a limited number of district offices in the state (13 at the time of the district court opinion), some welfare recipients must travel farther distances than others to be recertified. Defendants have adopted an informal rule that anyone who must travel more than 25 miles one way to the nearest office will be interviewed in his home town. The named plaintiffs all live a considerable distance, but no more than 25 miles, from the nearest city in which a recertification is available.[2] Each is thus required to expend at least a round-trip bus fare, the highest of which for these plaintiffs was apparently $3.10. Plaintiffs also claim that the trip might cause baby-sitting or day-care expenses while they are traveling to and from the welfare office, but it was apparently not established in the hearing before the district judge that any of these plaintiffs would actually incur such expenses.

Plaintiffs' underlying claim is that the Connecticut regulation violates various provisions of the Social Security Act and of regulations of the Department of Health, Education and Welfare (HEW), which require that aid be furnished with reasonable promptness, that it be given to all eligible persons, that the use of the grant not be restricted and that a uniform level of aid be afforded all eligible persons throughout

---

1. The particular regulations at issue provide as follows:

   § 17–2–29.
   As used in Section 17–82d of the general statutes, the word "periodic" in the phrase: "periodic investigations to determine eligibility" means
   1. No less frequently than ninety (90) days after the effective date of an AFDC award and every six (6) months thereafter, and for the other categories every twelve (12) months; . . .
   § 17–2–30.
   (a) As a condition of initial and continuing eligibility, the supervising relative shall make himself available for personal interview at the appropriate location designated by the district office. . . .
   § 17–2–31.

   The AFDC personal interview provided for in subsection (a) of section 17–2–30 for redetermination of eligibility is a face-to-face interview in the district office of the department. . . .
   36 Conn.L.J. 10A (June 3, 1975). (C.G.S.A. § 17–82d, referred to in § 17–2–29, requires the Commissioner of Welfare to "make periodic investigations to determine eligibility" of welfare recipients.) At the time of the district court decision, this policy was embodied in temporary emergency regulations, see 385 F.Supp. at 675 & n. 1.

2. Apparently, plaintiff Vivian Feltault has a round trip of 52 miles. 385 F.Supp. at 676. It is not clear why the 25-mile rule was not applied in her case.

the state.[3] Although there is an obvious national interest in claims that federal funds are not being expended in accordance with federal law,[4] this does not suffice to give the district court jurisdiction under 28 U.S.C. § 1331(a) because the amount in controversy for each plaintiff is far less than $10,000. Accordingly, in this case as in so many others involving the welfare laws, plaintiffs made a strenuous effort in the district court to constitutionalize their claims, invoking 42 U.S.C. § 1983 and its jurisdictional counterpart 28 U.S.C. § 1343(3), so that the district court could then acquire pendent jurisdiction over the statutory claims.[5] In addition, plaintiffs argue that 28 U.S.C. § 1343(3) and (4) themselves give jurisdiction over the statutory claims. Citing *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), and *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), Judge Blumenfeld held that plaintiffs' constitutional claims were so insubstantial that they did not meet "the very minimal standards of

merit which must be satisfied before a District Court may assume jurisdiction of a claim under 28 U.S.C. § 1343(3)." 385 F.Supp. at 677. This holding was directed at the three constitutional claims plaintiffs made below. Two of these have apparently been abandoned in this court,[6] and we agree with the district judge as to the third, to which we now turn.

I

Plaintiffs' remaining constitutional argument is that requiring interviews every six months in designated district offices denies them the equal protection of the laws under the fourteenth amendment. This is so because the policy creates two classes of needy children who receive AFDC benefits: One class, whose members do not live near a district office, must spend money for travel and child-care costs as a condition of continued eligibility; the other class is not so burdened. Therefore, say plaintiffs, the first class (to which they belong) is discriminated against. Citing,

---

**3.** Plaintiffs rely on 42 U.S.C. § 602(a)(1) ("A State plan for aid and services to needy families with children must . . . be in effect in all political subdivisions of the State"); 42 U.S.C. § 602(a)(10) ("[A]id to families with dependent children shall be furnished with reasonable promptness to all eligible individuals"); 42 U.S.C. § 606(b) (" 'aid to families with dependent children' means money payments with respect to . . . a dependent child or dependent children . . . [or] to meet the needs of the relative with whom any dependent child is living . . . [which may be made to any] individual who . . . is interested in or concerned with the welfare of such child"); 45 C.F.R. § 205.120(a) ("A State plan . . . must . . . be in operation, through a system of local offices, on a statewide basis in accordance with equitable standards for assistance and administration"); and 45 C.F.R. § 205.130(a)(2) (Funds must be "apportioned among the political subdivisions of the State on a basis consistent with equitable treatment of individuals in similar circumstances throughout the State").

**4.** See *Rosado v. Wyman*, 397 U.S. 397, 422–23, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). The federal government pays a substantial part of AFDC grants under a complicated matching formula set out in 42 U.S.C. § 603.

**5.** The pattern of adjudicating challenges to state welfare regulations on statutory grounds which are pendent to constitutional claims may be seen in *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). See *Hagans v. Lavine*, 415 U.S. 528, 549–50, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

**6.** In the district court, plaintiffs charged that the challenged regulation violated the due process clause (1) by setting up an irrebuttable presumption that the flat grant awards under the AFDC program were sufficient for recipients to meet the transportation and child-care expenses necessitated by the recertification interviews, as well as their other needs; and (2) by denying recipients the meaningful hearing before termination of benefits to which they are entitled, *Goldberg v. Kelly*, 398 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), since termination hearings were only held in the same district offices as recertification interviews. To the extent that these claims are still pressed, we believe they are adequately dealt with in the opinion of the district court. 385 F.Supp. at 680–81.

among other authorities, *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) ($25 filing fee for judicial review of welfare terminations does not violate due process or equal protection clauses), and *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) ($50 filing fee for bankruptcy does not violate fifth amendment), the district court held this claim insubstantial. We agree.

The logical end of plaintiffs' position is that the Constitution prevents a state from providing governmental offices in only a limited number of locations or else requires the state to reimburse those who incur travel or other expenses in getting to a government office. The first alternative is completely without merit. *Dublino v. New York State Department of Social Services*, 348 F.Supp. 290, 298 (W.D.N.Y.1972), rev'd on other grounds, 413 U.S. 405, 93 S.Ct. 940, 35 L.Ed.2d 255 (1973). As Judge Blumenfeld pointed out, the same logic could equally require innumerable courthouses in which claims like those made here are to be adjudicated. Whatever may be the inadequacy of cost considerations in other contexts, see *City of New York v. Richardson*, 473 F.2d 923, 932 (2d Cir. 1973), it can not be that a state may not reasonably limit its administrative offices in order to minimize costs.[7] The second alternative, reimbursing welfare recipients for travel expenses, raises an issue of policy but not, under Supreme Court decisions, a substantial question of constitutional law. A state legislature is constitutionally free to decide not to provide reimbursement for travel costs in its AFDC grant, however desirable such reimbursement would be. *Dandridge v. Williams*, 397 U.S. 471, 478, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). Cf. *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

Plaintiffs argue that the district court should not have dismissed the action as too insubstantial to justify jurisdiction, no matter how the court might eventually rule on the merits. It is true that the three-judge court in *Dublino*, supra, did consider a similar argument on the merits, thereby implying that the equal protection claim here is substantial enough to provide jurisdiction (and require the convening of a three-judge court). But the primary argument there was that the requirement of personal appearance at a district office for an arbitrarily-determined group of "employables" was itself irrational, not that the state discriminated geographically. Plaintiffs also cite *Henry v. White*, 359 F.Supp. 969 (D.Conn.1973), in which Judge Newman refused to dismiss as insubstantial an analogous equal protection claim based upon the closing of a welfare district office in Norwalk. The judge ruled that it was not apparent, on defendant's motion to dismiss, why "the selection of Norwalk for an office closing bears the requisite rational relationship" to administrative efficiency, particularly since there were "welfare offices in every other city of comparable size (save one) and in numerous smaller cities." Id. at 972. On a fuller record, the judge ultimately did dismiss the complaint. *Henry v. White*, Civil No. 15,332 (D.Conn. Sept. 12, 1974) (unreported oral opinion). But while the reasonableness of closing a particular office may require factual inquiry, the rationality of not having an office in every locality is self-evident. Moreover, there must come a time, after several adjudications on the merits, when a constitutional claim which was from the first dubious (but worthy of discussion on the merits and capable of supporting pendent jurisdiction) has been rejected convincingly enough that similar or weaker[8] claims can only be considered frivolous. In short, we agree with Judge Blumenfeld that plaintiffs'

---

7. We put to one side, as the district judge did, the question whether all district offices could be located in one corner of the state, rather than distributed throughout heavily populated areas, as here.

8. We note that the unsuccessful plaintiffs in *Dublino* were required to appear at a welfare office twice a month, obviously a greater burden than the twice-a-year requirement here.

equal protection contention is insubstantial.

## II

Plaintiffs argue, however, that even if their equal protection claim lacks sufficient substantiality to confer jurisdiction, the district court still had jurisdiction to decide the claim that the Connecticut regulation was in conflict with the Social Security Act and with federal regulations.[9] Plaintiffs contend (1) that what the district court regarded as pendent statutory claims are themselves claims that constitutional rights have been violated, and that jurisdiction to decide them may be based on 28 U.S.C. § 1343(3); and (2) that even if the claims are merely statutory, jurisdiction exists under 28 U.S.C. § 1343(4).

### A. Section 1343(3)

Section 1343(3) confers jurisdiction on the district courts, without regard to amount in controversy, "to redress the deprivation, under color of State law, . . . of any right . . . secured by the Constitution . . . or by any Act of Congress providing for equal rights of citizens . . . ." We have held that the Social Security Act is not an act "providing for equal rights," and that therefore section 1343(3) does not provide jurisdiction over claims that a state has violated that Act's provisions. *Aguayo v. Richardson*, 473 F.2d 1090, 1101 (2d Cir. 1973), cert. denied sub nom. *Aguayo v. Weinberger*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); *Almenares v. Wyman*, 453 F.2d 1075, 1082 n. 9 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *McCall v. Shapiro*, 416 F.2d 246 (2d Cir. 1969); *Rosado v. Wyman*, 414 F.2d 170, 177, 181 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Accord, *Randall v. Goldmark*, 495 F.2d 356, 359 (1st Cir.), cert. denied, 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 119 (1974); contra, *Blue v. Craig*, 505 F.2d 830 (4th Cir. 1974). Plaintiffs contend, however, that section 1343(3) should be construed to provide jurisdiction over any claim under 42 U.S.C. § 1983,[10] that the latter statute covers statutory as well as constitutional claims ("rights . . . secured by the Constitution and laws . . ."), and that therefore the "providing for equal rights" limitation of section 1343(3) must be disregarded. That question, on which there is now a circuit conflict, is a substantial one and has excited scholarly comment,[11] but the Supreme Court has not yet decided it. See *Hagans v. Lavine*, supra, 415 U.S. at 533 n. 5, 94 S.Ct. 1372; cf. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 543 n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). We believe that under our prior decisions, cited above, the issue is foreclosed for us.

Plaintiffs also argue that a claim that state welfare regulations violate the Social Security Act is in fact a claim, under section 1343(3), of deprivation of rights "secured by the Constitution," because such a claim cannot succeed without ultimate resort to the Supremacy Clause. This argument was also noted but not reached in *Hagans*, supra. We reject the contention because it trans-

---

9. This argument was apparently not made to Judge Blumenfeld. Plaintiffs excuse this with the assertion that the jurisdictional issue was raised by the court on its own motion after a hearing on plaintiffs' motion for a preliminary injunction.

10. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

11. See, e. g., Note, Federal Jurisdiction Over Challenges to State Welfare Programs, 72 Colum.L.Rev. 1404, 1421–26 (1972); Herzer, Federal Jurisdiction Over Statutorily-Based Welfare Claims, 6 Harv.Civ.Rights-Civ.Liberties L.Rev. 1 (1970); Cover, Establishing Federal Jurisdiction in Actions Brought to Vindicate Statutory (Federal) Rights When No Violations of Constitutional Rights are Alleged, Clearinghouse Rev., Feb.–Mar. 1969, 5.

forms statutory claims into constitutional claims by verbal legerdemain. The Supremacy Clause does not secure rights to individuals; it states a fundamental structural principle of federalism. While that clause is the reason why a state law that conflicts with a federal statute is invalid, it is the federal statute that confers whatever rights the individual is seeking to vindicate. Moreover, the language of section 1343(3) clearly contemplates a distinction between rights secured by the Constitution and rights secured by "any Act of Congress." If the latter were just one variety of the former, it would be unnecessary to mention it as a separate situation. The Supreme Court has rejected a similar attempt to construe statutory claims as Supremacy Clause (and therefore constitutional) claims in the context of 28 U.S.C. § 2281,[12] *Swift & Co. v. Wickham*, 382 U.S. 111, 125–28, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), and we see no reason to reach a different result here.

B. Section 1343(4)

■ Section 1343(4) provides for federal jurisdiction over claims "under any Act of Congress providing for the protection of civil rights." The argument that this statute confers jurisdiction over claims based on the Social Security Act has also been rejected by us, because "The Social Security Act is not one 'providing for the protection of civil rights.'" *McCall v. Shapiro*, supra, 416 F.2d at 249; *Almenares v. Wyman*, supra, 453 F.2d at 1082 n. 9. Plaintiffs say, however, that their claim is not based on the Social Security Act, but on 42 U.S.C. § 1983, "which is historically and textually a 'civil rights' Act." *Blue v. Craig*, supra, 505 F.2d at 842. On this theory, section 1983 is " 'an Act of Congress providing for the protection of civil rights,' even if it does not secure rights in and of itself."[13]

This theory, like plaintiffs' first argument based upon section 1343(3), is substantial. It has a surface plausibility, as the just-quoted language from *Blue* points out, which has also commended itself to the Fifth Circuit. *Gomez v. Florida State Employment Service*, 417 F.2d 569, 580 n. 39 (5th Cir. 1969).[14] Moreover, plaintiffs' action raises an interpretation of a federal statute and charges that federal funds are not being administered in accordance with it. Therefore, in justifying a federal forum for the action, plaintiffs' argument reaches a result which we do not find uncongenial. Yet we hesitate to embrace this jurisdictional theory. The point was explicitly and unsuccessfully urged upon us in plaintiffs' briefs in *Almenares, McCall* and *Rosado*, although the opinions in those cases do not discuss the argument.[15] Moreover, like the Supremacy Clause contention, plaintiffs' theory takes a claim which in any normal understanding is based on the Social Security Act, and says that it is really based on something else, because something else must be invoked before relief is available. In this sense, section 1983 "merely provides a procedure by which substantive rights secured by other statutes can be asserted, and does not itself provide for the protection of civil rights." Note, Federal Jurisdiction Over Challenges to State Welfare Programs, 72 Colum.L.Rev. 1404, 1427 (1972). More importantly, section 1343(4) was enacted as part of the Civil Rights Act of 1957 in order to ensure jurisdiction over claims

---

**12.** This statute provides:

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute . . . shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefore is heard and determined by a district court of three judges . . . .

**13.** Cover, supra note 11, at 25.

**14.** Accord, *Roselli v. Affleck*, 373 F.Supp. 36 (D.R.I.) (alternate ground of jurisdiction), aff'd without discussion of jurisdiction, 508 F.2d 1277 (1st Cir. 1974); *Bass v. Rockefeller*, 331 F.Supp. 945, 949 n. 5 (S.D.N.Y.), appeal dismissed as moot, 464 F.2d 1300 (2d Cir. 1971).

**15.** With the exception of Judge Lumbard's concurring opinion in *Rosado*, 414 F.2d at 180, 181, which rejects it.

based on that statute. H.R.Rep.No.85–291, 1957 U.S.Code Cong. & Admin. News, pp. 1966, 1976; Note, Federal Jurisdiction Over Challenges to State Welfare Programs, supra, at 1427–28. It is true that the Supreme Court has applied section 1343(4) in cases based on the Civil Rights Act of 1866, *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 412 n. 1, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), and on the Voting Rights Act of 1965. *Allen v. State Board of Elections*, 393 U.S. 544, 554, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). But there is a difference between extending section 1343(4) to laws such as these, which protect specific rights and engender comparatively little litigation, and applying it to section 1983, which protects all rights "secured by the Constitution and laws." In the context of a similar argument, the First Circuit has observed in *Randall v. Goldmark*, supra, 495 F.2d at 360:

> Although [*Jones v. Mayer*] might be taken as an endorsement of a broad reading of the statute, applying section 1343(4) to section 1983 would in essence eliminate the jurisdictional amount requirement for any federal question case involving deprivations under color of state law, a consequence arguably so broad when measured in the light of the congressional objectives in adding section 1343(4), that we prefer not to make a positive commitment at this time.

Putting all of these considerations together, we are left, as the First Circuit was in *Randall*, with the feeling that we should not take the possibly large jurisdictional step plaintiffs urge upon us.

Accordingly, we conclude that jurisdiction in the district court cannot be found on any of the theories advanced by plaintiffs. We note the irony, as one of our brothers has elsewhere,[16] of having to spend so much time and effort on questions of jurisdiction when the underlying issues on the merits seem comparatively simple. Moreover, we recognize, as we have before,[17] that such claims are highly appropriate for a federal forum, and we are aware that it may seem hypertechnical to permit subtle analysis of jurisdictional statutes to accomplish a result which, on policy grounds, we find uncongenial.[18] But we prefer to await guidance on these jurisdictional issues, on which there is now a clear conflict among the circuits, either from higher authority or from Congress.[19]

Judgment affirmed.

**16.** Friendly, Federal Jurisdiction: A General View, 123 (1973).

**17.** *Almenares v. Wyman*, 453 F.2d 1075, 1085 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

**18.** See Cover, supra note 11, at 25.

**19.** For proposals for legislative reform in this area, see Friendly, supra note 16, at 123–24; American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, § 1311, at 172–76 (1969).