Julia **GONZALEZ, Individually and as guardian ad litem for Luis Gonzalez, age 9, and Manuel Gonzalez, age 10, and further on behalf of all persons similarly situated, Appellant,**

v.

**James F. YOUNG, Director, Hudson County Welfare Board and G. Thomas Ritti, Director, New Jersey Division of Public Welfare.**

No. 76–2410.

United States Court of Appeals, Third Circuit.

Argued June 7, 1977.

Decided July 15, 1977.

---

**3.** The fifth factor admittedly is not involved.

162

Timothy K. Madden, Director, Jersey City, N.J., for appellant; Theodore A. Gardner, Hudson County Legal Services Corp., Jersey City, N.J., on the brief and of counsel.

Harold J. Ruvoldt, Jr., Hudson County Counsel, Jersey City, N.J., for Hudson County Welfare Board Director and Hudson County Welfare Bd.; William D. Surdovel, Asst. County Counsel, Jersey City, N.J., on the brief and of counsel.

William F. Hyland, Atty. Gen. of New Jersey, Trenton, N.J., for appellee G. Thomas Ritti, Director, New Jersey Division of Public Welfare; Stephen Skillman, Asst. Atty. Gen., Trenton, N.J., of counsel, Richard M. Hluchan, Deputy Atty. Gen., on the brief.

Before ALDISERT, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal requires us to resolve a question which was left open by the Supreme Court in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), and which has divided the circuits. We are to decide whether the district court had jurisdiction in a claim for damages totalling less than $10,000 and alleging that a state regulation conflicts with a federal statute and therefore must fall because of the Supremacy Clause.

The question is presented in an appeal by Julia Gonzalez from summary judgment in favor of appellees James F. Young, Director

of the Hudson County, New Jersey Welfare Board, and G. Thomas Ritti, Director of the New Jersey Division of Public Welfare. The district court, presented with a challenge to New Jersey welfare regulations which allegedly deprived Gonzalez of benefits ensured by a federal statute, determined that no conflict existed between the challenged state regulations and the applicable provisions of the federal statute and accompanying regulations. Because we determine that the district court did not have jurisdiction over this case in the posture in which it was presented, we vacate the district court's order and remand for dismissal of the complaint for want of jurisdiction.

## I.

Appellant resides with her two children in Jersey City, New Jersey. Each month, she receives $235.00 under the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. § 601 *et seq.*, as well as $157.00 under the Social Security Administration's disability program for her one retarded son. On February 2, 1976, Gonzalez received and cashed both checks at a neighborhood food market. Upon leaving the store, she was accosted by a robber who stole the cash. The following day she explained her situation to the Hudson County Welfare Board, requesting $163.00 in emergency assistance funds to cover her rent and utility bills.

States which elect voluntarily to participate in the federal government's AFDC program dispense the federal monies ("matching funds") obtained under the program according to federal eligibility criteria. Minimum standards for emergency assistance eligibility are set out in 42 U.S.C. § 606(e)(1) and its accompanying regulation, 45 C.F.R. 233.120. The statute provides that emergency assistance to needy families with children embraces cases "where [an eligible] child is without available resources, the payments, care, or services involved are necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or train-

ing for employment . . . ." 42 U.S.C. § 606(e)(1).

45 C.F.R. 233.120(a)(1) provides that in order to receive funding, a participating state must specify in a "state plan" the eligibility conditions to be imposed for receipt of emergency assistance. After electing to participate in the AFDC program, New Jersey promulgated the following provision in regard to emergency assistance payments:

> When because of an emergent situation over which they have had no control or opportunity to plan in advance, the eligible unit is in a state of homelessness; and the County Welfare Board determines that the providing of shelter and/or food and/or emergency clothing, and/or minimum essential house furnishings are necessary for health and safety, such needs may be recognized in accordance with the regulations and limitations in the following sections.

N.J.A.C. 10:82–5.12. Pursuant to this state regulation, on March 15, 1976, the Hudson County Welfare Board formally denied Gonzalez' request for emergency assistance stating that no assistance would be granted because Gonzalez was not in an "imminent or actual state of homelessness."

In her complaint to the district court, Gonzalez alleged that appellee Young violated 42 U.S.C. § 606(e)(1) and 45 C.F.R. 233.120 by refusing to authorize emergency assistance in the amount of $163.00 "even though Julia Gonzalez is clearly entitled to same under Federal Law . . . ." She further alleged that appellee Ritti was responsible for "refusing to promulgate meaningful administrative procedures" for the emergency assistance program, a claim which was mooted by subsequently promulgated state regulations. Although not articulated, the gravamen of the complaint, and what is pressed on appeal, is that the New Jersey standard violates federal law because it is more restrictive than the standards mandated by federal statute.

## II.

Gonzalez predicated jurisdiction in the district court upon 42 U.S.C. § 1983 and

28 U.S.C. §§ 1331, 1343. Section 1983 provides for a federal cause of action to redress the deprivation, under color of state law, "of any rights, privileges, or immunities secured by the Constitution and laws . . . ." We hold that it is not a jurisdictional statute; it only fashions a remedy. Thus, although Gonzalez may have asserted a claim under section 1983, she had to look to other authority to obtain jurisdiction.

■ At the onset, 28 U.S.C. § 1331 was properly rejected by the district court because the amount in controversy did not exceed $10,000.00. Gonzalez sought only $163.00 in damages, along with declaratory and injunctive relief. Thus, it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). *See Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971).

The use of 28 U.S.C. § 1343 as a jurisdictional wellspring for her section 1983 claim, however, is not as clear. Whether it can be used as such is a question of lively and current proportion, on which the circuits are split. The statute provides, in relevant part:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> .     .     .     .     .
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress *providing for equal rights* of citizens or of all persons within the jurisdiction of the United States;
> (4) To recover damages or to secure equitable or other relief under any Act of Congress *providing for the protection of civil rights*, including the right to vote.

28 U.S.C. § 1343(3), (4) (emphasis added).

## A.

■ Any inquiry into the scope of section 1343 must make immediate reference to the Supreme Court case of *Hagans v. Lavine, supra.* In *Hagans*, the Court decided that when a constitutional claim is made under section 1983 which is of sufficient substance to support federal jurisdiction, a district court has the power under section 1343(3) to consider other claims based on section 1983 without determining that the latter claims, standing alone, are sufficient to support jurisdiction. The current inter-circuit disagreement is largely over whether a claim that a state law conflicts with federal law is of "sufficient substance" to confer jurisdiction, and when, absent a clearly sufficient constitutional claim, there exists an independent basis for jurisdiction under section 1983. Indeed, the questions have been specifically left open by the Supreme Court on a number of occasions. In *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the Court stated: "We intimate no views as to whether and under what circumstances suits challenging AFDC provisions only on the ground that they are inconsistent with the federal statute may be brought in federal courts." *Id.* at 312 n. 3, 88 S.Ct. at 2131. And in *Hagans, supra,* the Court stated:

> In view of our disposition of this case, we do not reach the question whether, wholly aside from the pendent-jurisdiction rationale relied upon by the District Court, other valid grounds existed for sustaining its jurisdiction to entertain and decide the claim of conflict between federal and state law. It has been suggested, for example, that the conflict question is itself a constitutional matter within the meaning of § 1343(3). *Connecticut Union of Welfare Employees v. White*, 55 F.R.D. 481, 486 (Conn.1972). For purposes of interpreting and applying 28 U.S.C. § 2281, the three-judge-court provision, a claim of conflict between federal and state law has been denominated a claim not requiring a three-judge court. *Swift & Co. v. Wickham*, 382 U.S. 111, [86 S.Ct. 258, 15 L.Ed.2d 194] (1965). But *Swift* itself recognized that a suit to have a state statute

declared void and to secure the benefits of the federal statute with which the state law is allegedly in conflict cannot succeed without ultimate resort to the Federal Constitution—"to be sure, any determination that a state statute is void for obstructing a federal statute does rest on the Supremacy Clause of the Federal Constitution." *Id.*, at 125, [86 S.Ct. at 266]. Moreover, when we have previously determined that state AFDC laws do not conform to the Social Security Act or HEW regulations, they have been invalidated under the Supremacy Clause. See *Townsend v. Swank*, 404 U.S. 282, 286, [92 S.Ct. 502, 505, 30 L.Ed.2d 448] (1971). It is therefore urged that the "secured by the Constitution" language of § 1343(3) should not be construed to exclude Supremacy Clause issues. That question we leave for another day.

Petitioners contend that § 1983 authorizes suits to vindicate rights under the "laws" of the United States as well as under the Constitution and that a suit brought under § 1983 to vindicate a statutory right under the Social Security Act, is a suit under an Act of Congress "providing for the protection of civil rights, including the right to vote" within the meaning of § 1343(4). They further argue that in any event, § 1343(3) in particular, and § 1343 in general, should be construed to invest the district courts with jurisdiction to hear any suit authorized by § 1983. These issues we also do not reach. . . .

415 U.S. at 533–34 n. 5, 94 S.Ct. at 1377. *See also Lynch v. Household Finance Corp.*, 405 U.S. 538, 543–44 n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Rosado v. Wyman*, 397 U.S. 397, 405 n. 7, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). *See generally District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

### B.

Appellant contended in the district court that her complaint raised a nonfrivolous constitutional claim over which the court was obliged to exercise jurisdiction. Our reading of the complaint is that there was no independent constitutional claim sufficient to fall within the jurisdictional language of § 1343(3). We begin by accepting the district court's characterization: "The only constitutional claim the plaintiff presents is that the alleged conflict between the state and federal statutes and regulations violates rights secured for her by the Supremacy Clause of the Constitution." 418 F.Supp. at 569. The district court, however, found it unnecessary to reach this claim, since it had already determined that jurisdiction existed under both section 1343(3) and (4). Under the current state of the law, we suggest that the proper course would have been to determine *initially* whether what was identified as the "constitutional claim" was of "sufficient substance" to confer jurisdiction under section 1343(3), *i. e.*, one to which Gonzalez' statutory claim could then be appended under *Hagans, supra.*[1]

On the question whether a claim that state law conflicts with federal law establishes a sufficient constitutional claim, through the Supremacy Clause, to establish jurisdiction under section 1343(3), we find ourselves in complete agreement with the Second Circuit's resolution of this same problem. In *Andrews v. Maher*, 525 F.2d 113 (2d Cir. 1975), that court was presented with a claim that a Connecticut regulation violated various provisions of the Social Security Act, as well as regulations of the Department of Health, Education and Welfare (HEW), which required that AFDC aid be furnished under certain conditions. Addressing the contention that since this claim

---

1. In advocating this method, we are mindful of the Supreme Court's teaching that where pendent jurisdiction obtains, a court should dispose of the case on the nonconstitutional grounds if possible. *E. g., Hagans v. Lavine, supra*, 415 U.S. at 543, 94 S.Ct. 1372; *California Human Resources Dep't v. Java*, 402 U.S. 121, 124, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); *Dandridge v. Williams*, 397 U.S. 471, 475–76, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). We are merely advising that in order to *obtain* jurisdiction, the constitutional claim(s) should be examined first.

required ultimate resort to the Supremacy Clause, it was cognizable under section 1343(3) as a deprivation of rights "secured by the Constitution," the court stated:

> We reject the contention because it transforms statutory claims into constitutional claims by verbal legerdemain. The Supremacy Clause does not secure rights to individuals; it states a fundamental structural principle of federalism. While that clause is the reason why a state law that conflicts with a federal statute is invalid, it is the federal statute that confers whatever rights the individual is seeking to vindicate. Moreover, the language of section 1343(3) clearly contemplates a distinction between rights secured by the Constitution and rights secured by "any Act of Congress." If the latter were just one variety of the former, it would be unnecessary to mention it as a separate situation. The Supreme Court has rejected a similar attempt to construe statutory claims as Supremacy Clause (and therefore constitutional) claims in the context of 28 U.S.C. § 2281, *Swift & Co. v. Wickham*, 382 U.S. 111, 125–28, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), and we see no reason to reach a different result here.

*Id.* at 118–19 (footnote omitted).

■ We are cognizant that other courts have held to the contrary. In *Blue v. Craig*, 505 F.2d 830 (4th Cir. 1974), the court cited with approval the Supreme Court's statement in *Swift & Co. v. Wickham*, 382 U.S. 111, 125, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), that "to be sure, any determination that a state statute is void for obstructing a federal statute does rest in the Supremacy Clause." 505 F.2d at 844. With this we agree. However, the *Blue* court concluded that "a claim that a state statute or regulation is inconsistent with federal law poses a constitutional issue under the Supremacy Clause, jurisdictionally cognizable under § 1343(3)" by relying on the *Hagans* footnote quoted above. We fail to comprehend

how the *Hagans* passage, which specifically left the question unresolved, compels a finding that sections 1983 and 1343(3) are coextensive. A statement which specifically does not meet a question cannot be cited as authority for answering it. We conclude that jurisdiction must rest on a constitutional claim of sufficient substance, independent of statutory conflicts under the Supremacy Clause.

### C.

■ Having determined that Gonzalez' complaint presented no constitutional claim sufficient to confer jurisdiction under section 1343(3), we must consider whether the statutory claims had an independent basis for jurisdiction under either section 1343(3) or (4). Jurisdictional sections 1343(3) and (4) of Title 28 are cast in narrower language than that of remedial section 1983 of Title 42. For example, although section 1983 provides for redress of "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," section 1343(3) covers only those secured by the Constitution *or* an "Act of Congress *providing for equal rights of citizens.*" (Emphasis added.)[2] Appellant nevertheless urged in the district court that the qualifying language of section 1343(3) is superfluous and that, at any rate, section 1983 should be viewed as an act "providing for equal rights." We cannot agree. Gonzalez claims deprivation not of a right secured by the Constitution, but one falling within the Social Security Act, which contains the AFDC provisions. And provisions of the Social Security Act simply were not designed to provide for the equal rights of citizens for purposes of section 1343(3). *Accord, Andrews v. Maher, supra,* 525 F.2d at 118; *Rosado v. Wyman,* 414 F.2d 170 (2d Cir. 1969), *rev'd on other grounds,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Randall v. Goldmark,* 495 F.2d 356 (1st Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 144, 42

---

**2.** In *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), in which the Supreme Court made repeated references to section 1983 "and its jurisdictional counterpart [28 U.S.C. § 1343(3)]", *id.* at 540, 543, 92 S.Ct. at 1117, the Court itself characterized the "equal rights" language as a "limitation". *Id.* at 544 n. 7, 92 S.Ct. at 1116.

L.Ed.2d 119 (1974); *Dorak v. Shapp,* 403 F.Supp. 863, 865 (M.D.Pa.1975); *Mattingly v. Elias,* 325 F.Supp. 1374, 1383 (E.D.Pa. 1971), *rev'd on other grounds,* 482 F.2d 526 (3d Cir. 1973). *But see Blue v. Craig, supra; Vazquez v. Ferre,* 404 F.Supp. 815 (D.N.J.1975); *Watters v. Parrish,* 402 F.Supp. 696 (W.D.Va.1975).[3]

The district court's total reliance on the rationale of *Vazquez v. Ferre, supra,* to support jurisdiction under section 1343(3), was misplaced. In *Vazquez,* plaintiffs' complaint set forth three causes of action. The section 1983 claim, in the court's own words, was "based upon the deprivation of statutory *as well as* constitutional rights." 404 F.Supp. at 823 (emphasis added). Thus, under the holding of *Hagans,* the *Vazquez* court was free to explore the statutory claims.

To the extent that *Vazquez* sought to bring all section 1983 claims—wholly or partially statutory—under section 1343(3) automatically, we reject it. There is discussion to the effect that the legislative history of section 1343(3) demonstrates that its language was not intended to reduce the jurisdiction of federal district courts over section 1983 actions. This was the tack taken by the Fourth Circuit in *Blue v. Craig, supra,* perhaps the foremost circuit court case in favor of bringing wholly statutory section 1983 claims under section 1343.

We cannot accept this approach. The term "equal rights" first appeared in that part of the 1875 revision of the Civil Rights Act of 1871 which addressed jurisdiction of the circuit courts. Rev.Stat. § 629(16).[4] The Fourth Circuit contends, and the district court in *Vazquez* agreed, that the term "equal rights" had a broader meaning at that time than it does today. 505 F.2d at

839; 404 F.Supp. at 824. Under this view, the term is merely a " 'short-hand' reference back to all rights of actions qualifying for enforcement under the various remedial statutes enacted to give effect to the mandates of the Fourteenth Amendment." 505 F.2d at 839.

Absent convincing evidence to the contrary, however, we must believe that Congress intended to separate the jurisdictional section from the section fashioning a remedy, which it did, and that "equal rights" does have meaning of its own. We note specifically, as did the Supreme Court in *Lynch v. Household Finance Corp., supra,* 405 U.S. at 544 n. 7, 92 S.Ct. 1113, that when Congress finally abolished the circuit courts' original jurisdiction in 1911 by merging the previously separate jurisdictional grants for the district courts and circuit courts into what is now section 1343(3), it retained the "equal rights" limitation.

Nor do we believe that the Social Security Act is one "providing for the protection of civil rights," as to bring this action under section 1343(4). No claim was made by Gonzalez of infringement of personal liberty, unlawful classification, or discrimination. Again we make reference to the actions of Congress in enacting the jurisdictional grant. Section 1343(4) was intended to ensure jurisdiction over claims based upon the Civil Rights Act of 1957. *See* H.R.Rep. No. 85–291, 1957 U.S.Code Cong. & Admin.News 1966, 1976 (1957). The Social Security Act, which protects the rights Gonzalez asserts here, is of a decidedly dissimilar purpose.

There is an ancillary argument that section 1983 itself provides a jurisdictional basis under section 1343(4) by virtue of its

---

3. An early discussion of this, and many of the issues presented by this case, is found in Note, *Federal Jurisdiction Over Challenges to State Welfare Programs,* 72 Col.L.Rev. 1404 (1972).

4. By the Act of June 20, 1874, § 2, Congress charged Secretary of State Hamilton with the duty of preparing for publication and distribution the Revised Statutes of the United States. 18 Stat. 113–14. This work, according to its title page, embraced the statutes of

the United States, general and permanent in their nature, in force on Dec. 1, 1873, as revised and consolidated by commissioners appointed under an act of Congress. Congress "enacted" the Revised Statutes on June 22, 1874; Secretary Fish affixed his seal to the finished work on February 22, 1875. *Brawer v. Horowitz,* 535 F.2d 830, 838 n. 16 (3d Cir. 1976). *Brawer* provides a discussion of the Act of April 20, 1871.

very existence as a statute protecting "rights, privileges and immunities". *See, e. g., Gomez v. Florida State Employment Service,* 417 F.2d 569, 580 n. 39 (5th Cir. 1969). This chicken-and-egg approach must be rejected for several reasons. We have already noted that the language of the two statutes is not the same; one is more restrictive than the other. Second, and more important, it is our view that section 1983 does not in and of itself create or secure any substantive rights; it merely authorizes a cause of action when rights secured by *another* source have been infringed. In the present case, that "other" source is the Social Security Act. To say in one instant that the Social Security Act is not sufficient in itself to confer jurisdiction under section 1343(4) as an act "providing for the protection of civil rights", and yet to permit the cloaking of that claim within section 1983 *merely in order to confer jurisdiction,* is a route we cannot take. Moreover, as we have heretofore observed, *supra* note 2, the Supreme Court has explicitly rejected the notion that section 1983 is a jurisdictional statute by express reference to 28 U.S.C. § 1343(3) as a "jurisdictional counterpart" of section 1983. *Lynch v. Household Finance Corp., supra,* 405 U.S. at 540, 543, 92 S.Ct. 1113.

We recognize that the Supreme Court has applied section 1343(4) in causes other than those brought solely under the Civil Rights Act of 1957. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 412 n. 1, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (Civil Rights Act of 1866); *Allen v. Board of Education,* 393 U.S. 544, 554, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (Voting Rights Act of 1965). For the reasons expressed by our brethren on the First and Second Circuits, however, we do not go beyond these exceptions. In *Andrews v. Maher, supra,* the Second Circuit observed that "there is a difference between extending section 1343(4) to laws such as these, which protect specific rights and engender comparatively little litigation, and applying it to section 1983, which protects all rights 'secured by the Constitution and laws.'" 525 F.2d at 120. And in *Randall v. Goldmark,* 495 F.2d 356, 360 (1st Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 144,

42 L.Ed.2d 119 (1974), the First Circuit expressed similarly compelling reservations:

Although [*Jones v. Mayer*] might be taken as an endorsement of a broad reading of the statute, applying section 1343(4) to section 1983 would in essence eliminate the jurisdictional amount requirement for any federal question case involving deprivations under color of state law, a consequence arguably so broad when measured in the light of the congressional objectives in adding section 1343(4), that we prefer not to make a positive commitment at this time.

### D.

■ We end our analysis as we began it, by suggesting that the crucial polestar in examining the recent cases in this area is *Hagans, supra.* The presence of a substantial constitutional claim in a cause will afford a litigant the opportunity to press statutory section 1983 claims in the same action. Thus, in *Almenares v. Wyman,* 453 F.2d 1075 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972), the Second Circuit could, consistent with its usual position of no jurisdiction over wholly statutory section 1983 claims (*see e. g., Andrews v. Maher, supra; McCall v. Shapiro,* 416 F.2d 246 (2d Cir. 1969)), find jurisdiction in a case challenging as violative of HEW regulations state procedures for terminating AFDC benefits where the complaint *also* stated a substantial constitutional claim that the actions of the city violated due process. In *Rosado v. Wyman,* 414 F.2d 170 (2d Cir. 1970), *rev'd on other grounds,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the same court dismissed a challenge to a state statutory provision which allegedly reduced the amount of AFDC benefits due under the federal statute, since the district judge never had jurisdiction over a constitutional claim to which the statutory claim could have been pendent.

Indeed, the rule of *Hagans* harmonizes our determination in the present case with the decision reached in *Williams v. Wohlgemuth,* 540 F.2d 163 (3d Cir. 1976). In *Williams,* former Pennsylvania provisions of the same emergency assistance program at issue here were challenged. At that time,

the program limited assistance to emergency needs caused by either civil disorder or national disaster. Unlike the complaint filed for Gonzalez, which contained only the vaguest constitutional overtones relating to the Supremacy Clause, the complaint filed in *Williams* alleged that the former Pennsylvania provisions violated the equal protection and due process clauses of the Constitution. Determining that the constitutional claims were neither "wholly insubstantial" nor "wholly frivolous" under *Hagans, supra,* the court decided that the district court had properly taken jurisdiction over the case.

### III.

■ We are not unmindful of the merits of the argument that a federal forum is best suited for adjudicating a claim that federal monies are not being allocated according to a mandatory federal scheme. We have no choice, however, but to act within our jurisdictional limits. It may well be that a federal forum has the necessary sensitivities to handle these claims, but it is for Congress to so determine.

It has been noted that subsequent to enactment of the 1875 Judiciary Act, "the history of federal question jurisdiction . . . [has revolved] largely around the creation by Congress of myriad new federal rights and its provision for their enforcement in the national courts without regard to jurisdictional amount." Hart & Wechsler, The Federal Courts and the Federal System 729 (1953), quoted in *McCall v. Shapiro,* 416 F.2d 246, 249 (2d Cir. 1969). In 1969, the prestigious American Law Institute issued its Study of the Division of Jurisdiction Between State and Federal Courts. The Study recommended amending § 1331(a) to read: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction without regard to amount in controversy of all civil actions. . . ." In introducing S. 1876, the Federal Court Jurisdiction Act of 1973, which specifically incorporated this ALI recommendation, Senator Quentin Burdick stated:

The most important change here is that Federal question cases may be brought

without any requirement that the amount in controversy exceed a fixed dollar amount. The need for a Federal forum is no less in small cases than in large cases. This will clarify many troublesome problems that the district courts have faced in attempting to determine the value of a case, particularly when equitable relief is requested. Furthermore, it is important that in a case where parties seek to assert Federal rights, they have full access to the district courts.

Congressional Record, Vol. 119 at 16679 (May 23, 1973).

■ Simply put, Congress has not provided for enforcement of the AFDC program without regard to jurisdictional amount. Claims such as that pressed by Gonzalez here may continue to be adjudicated in federal court when they are pendent to a sufficient constitutional claim in the same action, but until Congress acts we are not in a position to adjudicate claims over which we could not exercise independent jurisdiction.

For the foregoing reasons, the judgment of the district court will be vacated and the cause remanded with a direction to dismiss for want of jurisdiction.

