**LOUISE B. et al.**

v.

**Aldo COLUATTI, etc., et al.**

**Appeal of LOUISE B. and Janie J. and Josephine R.**

No. 78–2468.

United States Court of Appeals, Third Circuit.

Argued July 10, 1979.

Decided Sept. 28, 1979.

**394**

Deborah Harris (argued), Community Legal Services, Inc., Philadelphia, Pa., for appellants.

Robert E. Kelly (argued), Kent D. Mikus, Deputy Atty. Gen., Norman J. Watkins, Deputy Atty. Gen., Chief, Civ. Litigation, Edward G. Biester, Jr., Atty. Gen., Pa. Dept. of Justice, Harrisburg, Pa., for appellees.

Before ADAMS, ROSENN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Appellants have challenged, on substantive and procedural grounds, a Pennsylvania program pursuant to which state employees suspected of improper receipt of public assistance payments are disciplined or terminated.[1] The district granted a motion to dismiss all of the appellants' claims. We will reverse the dismissal of most of those claims and remand for further proceedings.

### I. THE FACTS

Pennsylvania is a participant in the Aid to Families with Dependent Children Program (AFDC) established by the Social Security Act, 42 U.S.C. § 601 et seq. (the Act). Under that program, Pennsylvania, like all participating states, must meet the requirements of the Act, as primarily set forth in 42 U.S.C. § 602, in order to receive federal funding.

In October 1977, the Governor's Office of the State of Pennsylvania published Management Directive 505.19 announcing a pur-

---

1. The defendants named in this action, appellees here, are:

Aldo Coluatti, Acting Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania; Frank S. Beal, individually and as former Secretary of the Department of Public Welfare for the Commonwealth of Pennsylvania; Thomas Hooker, individually and in his capacity as Deputy Secretary for Family Assistance of the Pennsylvania Department of Public Welfare; Wilbur E. Hobbs, individually and in his capacity as Deputy Secretary of the Department of Public Welfare for the South Eastern Region; Don Jose Stovall, individually and in his ca-

pacity as Executive Director of the Philadelphia County Board of Assistance; Benjamin J. Pennero, individually and in his capacity as employee of the Department of Public Welfare of the Pennsylvania State Hospital at Byberry; Robert J. Coon, M. D., individually and in his capacity as Assistant Superintendent of Clinical Services at the Pennsylvania State Hospital at Byberry; Robert H. Freeman, individually and in his capacity as Director of Personnel and Labor Relations for the Philadelphia County Board of Assistance; and James Regan, Personnel Manager at Norristown State Hospital.

pose "[t]o promulgate policy and procedures to be followed by state agencies in applying disciplinary actions to employees who improperly receive public assistance benefits." 7 Pa. Bulletin 3060. Pursuant to this Directive, the Pennsylvania Department of Public Welfare (DPW) undertook to match the computer list of all welfare recipients with the list of all state employees. Once the employees who were also welfare recipients were identified, agency heads were instructed to review each case and consider certain enumerated factors before deciding upon what disciplinary action, if any, should be taken.[2]

Appellant Louise B. was employed by DPW as a psychiatric aide at the Pennsylvania State Hospital at Byberry. On January 13, 1978, she received a letter from the Assistant Superintendent of Clinical Services at the Hospital informing her that she was being suspended without pay for an indefinite period as of the close of business that day on the basis of an alleged willful receipt of welfare benefits to which she was not entitled. On January 26, 1978, she received a letter from the same official in-

forming her that she was fired as of January 27, 1978.

Appellant Janie J. works for DPW as a clerk-typist at the West District of the Philadelphia County Board of Assistance. On January 13, 1978, she was notified by letter that she was being suspended, as of the day before, for five days without pay for willfully receiving payments to which she was not entitled.

Appellant Josephine R. is employed by DPW as a clerk at the Norristown State Hospital. On January 11, 1978, she was personally informed by the Hospital's Personnel Manager that she would be suspended. As a result of consultations between her counsel and DPW, Josephine R.'s suspension was delayed. The record does not reveal that she ever was actually suspended. She alleges, however, that she "remains in fear that at any moment defendants will act upon the false accusations and suspend or fire her from her employment." Complaint, Paragraph 78.

These appellants filed suit on their own behalf and on behalf of four sub-classes.[3]

2. The following factors were to be considered:
 (1) The employe's explanation;
 (2) The nature of the accusations as outlined in the Department of Public Welfare's investigation report;
 (3) Whether restitution has been made by the employe;
 (4) The extent to which allowing the employe to continue in his or her position would be detrimental to the public's trust and confidence in the employe, the agency, and State government;
 (5) The employe's employment history with the agency;
 (6) Any other factors the agency head deems relevant.
 7 Pa. Bulletin 3060.
 The mere fact that one is receiving public assistance benefits and is employed by the state does not establish any illegality. The Directive *contemplated uncovering two main* types of wrongdoing:
 (1) The failure by recipients to disclose to DPW the fact of their employment; and
 (2) The failure by recipients to disclose to the DPW the actual amount of their income.

3. The complaint describes the sub-classes as follows:
 Subclass A consists of all present or former recipients of public assistance in Pennsylva-

nia who have been subjected to or are threatened with DPW's use or disclosure of confidential information concerning them for purposes not connected with the administration of the Title IV–A program.
 Subclass B consists of all employees of the Pennsylvania Department of Public Welfare who are present or former recipients of public assistance and who have been suspended, terminated, or are threatened with suspension or termination from their employment because they allegedly received public assistance overpayments.
 Subclass C consists of all present or former recipients of public assistance in Pennsylvania who have been subjected to DPW's use or disclosure of confidential information concerning them for purposes not connected with the administration of Title IV–A program.
 Subclass D consists of all employees of the Pennsylvania Department of Public Welfare who are present or former recipients of public assistance and who have been or will be suspended or terminated from their employment because they allegedly received public assistance overpayments.
 Complaint, Paragraphs 22, 23, 26 & 27.
 Although a motion for class certification was made, it was not ruled on as a result of the dismissal of the complaint.

Appellants' primary claims were that the disclosure and use of information concerning welfare recipients as the basis for disciplining those recipients violated Section 402(a)(9) of the Act, 42 U.S.C. § 602(a)(9), 45 C.F.R. § 205.50, and DPW regulations contained in DPW Manual Chapter 105 (the confidentiality claim); and that the procedures the recipients were suspended or terminated violated their right to due process as guaranteed by the fourteenth amendment (the procedural due process claim). Appellants also alleged claims based on the right to privacy, equal protection, substantive due process defamation, federal and state regulations prescribing procedures to be followed in cases of alleged overpayments, and the provisions of Management Directive No. 505.19 (set forth in n.2, *supra*) that establish procedures for reviewing individual cases prior to taking disciplinary action. The confidentiality claim was dismissed for lack of jurisdiction. The procedural due process claim was dismissed on the ground that *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) was controlling. The other federal claims were dismissed as being without merit and, presumably, therefore as not stating a claim upon which relief can be granted. The state law claims were thus left without any federal claims that could serve as a basis for pendent jurisdiction and were also dismissed.

On appeal, appellants have specifically urged only that the dismissal of the confidentiality and the procedural due process claims be reversed. At argument, counsel for appellants acknowledged that she pressed the other constitutional claims only insofar as they would serve as a basis for pendent jurisdiction over the confidentiality claim.[4] For the reasons now to be discussed, we will reverse the dismissal of the confidentiality and procedural due process claims. We will also reverse the dismissal of the constitutional privacy claim since, as a claim to which the confidentiality claim

may be pended, it provides an alternative basis for jurisdiction over that claim. We will leave to the district court the initial decision as to whether pendent jurisdiction should be exercised over the state law claims on the basis of these federal claims.[5] Since appellants sought reversal of the dismissal of the substantive due process and equal protection claims only as a basis for pendent jurisdiction over the confidentiality claim and since we will conclude that such claims are unnecessary to provide such a basis, the dismissal of those two claims will not be disturbed.

## II. THE CONFIDENTIALITY CLAIM

 Appellants argue that the DPW's disclosure of information from public assistance records to state agencies and the personnel offices of DPW for use in disciplining public assistance recipients who also were state employees violated 42 U.S.C. § 602(a)(9). That provision reads as follows:

(a) A state plan for aid and services to needy families with children must

. . . . .

(9) provide safeguards which restrict the use of disclosure of information concerning applicants or recipients to purposes directly connected with (A) the administration of the plan of the State approved under this part, the plan or program of the State under part B, C, or D of this subchapter or under subchapter I, X, XIV, XIX, or XX of this chapter, or the supplemental security income program established by subchapter XVI of this chapter, (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program, and (C) the administration of any other Federal or federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need; and the safeguards so provid-

4. She stated that we need not reach these constitutional claims if we held that there was some other jurisdictional basis for the confidentiality claim.

5. Of course, the exercise of that jurisdiction is generally favored. *See* n.12, *infra*.

ed shall prohibit disclosure, to any committee or a legislative body, of any information which identifies by name or address any such applicant or recipient. As mentioned, this claim was dismissed for lack of jurisdiction. Appellants argue that there is jurisdiction over this claim under 28 U.S.C. § 1331 and under the principles of pendent jurisdiction.[6] We agree with both arguments and will discuss each separately. In determining that there is a jurisdictional basis for this claim, we, of course, make no judgment as to its validity.

### A. Section 1331

Section 1331(a) provides:

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

This court, in *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974), described the scope of Section 1331 as follows:

> An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.

Thus, if appellants' claim falls within any one of the three categories listed in *Lindy*, jurisdiction exists under Section 1331

provided the jurisdictional amount is properly alleged.[7] We hold that the claim falls within at least the first two of these categories. The district court held that, even assuming that the state did not comply with Section 602(a)(9), the Social Security Act provides no remedy to recipients such as appellants in suits such as this one. The district court was of the view that the only remedy for a state's noncompliance with the requirements of Section 602 is the complete termination of federal payments by the Secretary of Health, Education and Welfare pursuant to 42 U.S.C. § 604(a)(2).

Fortunately, it is now well established that Section 604(a)(2) does not provide the only method of redressing such non-compliance. This issue was explicitly addressed by the Supreme Court in *Rosado v. Wyman*, 397 U.S. 397, 420, 90 S.Ct. 1207, 1222, 25 L.Ed.2d 442 (1970):

> We have considered and rejected the argument that a federal court is without power to review state welfare provisions or prohibit the use of federal funds by the State in view of the fact that Congress has lodged in the Department of HEW the power to cut off federal funds for noncompliance with statutory requirements. We are most reluctant to assume Congress has closed the avenue of effective judicial review to those individuals most directly affected by the administration of its program.

> . . . . .

> We adhere to *King v. Smith*, 392 U.S. 309 [, 88 S.Ct. 2128, 20 L.Ed.2d 1118] (1968), which implicitly rejected the argument that the statutory provisions for HEW review of plans should be read to curtail judicial relief . . . .

6. In the district court, appellants also alleged jurisdiction under 28 U.S.C. §§ 1343(3) & (4). This argument was foreclosed by the Supreme Court's decision in *Chapman v. Houston Welfare Rights Organization*, —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), which affirmed this court's decision in *Gonzalez v. Young*, 560 F.2d 160 (3d Cir. 1977). Section 1343 does not confer federal jurisdiction over claims based on the Social Security Act, since the Act is not one securing equal rights or civil rights.

7. Appellants did allege that they were entitled to damages in excess of $10,000. In their brief at p. 2, n.1, appellees state that they did not move to dismiss the complaint on the ground that the jurisdictional amount was improperly alleged primarily because they felt that the issue involved mixed questions of fact and law more appropriately raised on a motion for summary judgment than on one for dismissal. Thus the dismissal here was based solely on the ground that the claim was not one arising under federal law.

In *Edelman v. Jordan*, 415 U.S. 651, 675, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974), the Court recognized that "suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating states."

In addition to *Rosado* and *Edelman*, which explicitly address this question, a number of other decisions implicitly provide the same answer.[8] Therefore we hold that, pursuant to Section 1983, there is a remedy to redress violations of Section 602(a)(9).[9]

The district court held, however, that, even if Section 1331 would provide jurisdiction over a suit alleging that a state plan was inconsistent with the requirements of the Act, this suit did not allege such inconsistency. The court below reasoned that Section 602(a)(9) required that participating states provide safeguards insuring proper confidentiality and that, since Pennsylvania had enacted regulations to that end,[10] any failure to comply with such regulations raised purely an issue of state law. We, however, reject this reasoning.

We note initially that appellants' complaint specifically alleges that the appellees have violated Section 602(a)(9) as well as 45 C.F.R. § 205.50, which was enacted pursuant to that provision. It also alleges a violation of the state regulations.

Persuasive precedent exists in favor of the proposition that allegations of violations of state law in addition to violations of the Act do not negate the existence of a federal question. Essentially the same issue was addressed in *Rodriquez v. Swank*, 318 F.Supp. 289 (N.D.Ill.1970) (Three-Judge Court), *aff'd without opinion*, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971). The following is that court's statement of and reply to this argument.

> *Defendant Daniel, the Cook County Director of Public Aid, and defendant Barrett, the Cook County Comptroller, allege in support of their motion to dismiss that the federal "30-day requirement" is incorporated in the Illinois Department of Public Aid Manual and that there is, therefore, no inconsistency between state and federal law. However, the state regulation does not explicitly require receipt of funds within 30 days of application, as does the federal regulations (Section 2300(b)(5)). And more importantly, the complaints herein filed allege that defendants have not, in fact, provided funds within 30 days of application in the majority of cases. Because the federal regulations are valid and binding upon defendants, this allegation states a cause of action within the meaning of 42 U.S.C. § 1983.*

318 F.Supp. at 296 (footnote omitted) (emphasis supplied). Also, *see Gilliard v. Craig*, 331 F.Supp. 587 (W.D.N.C.1971) (Three-Judge Court), *aff'd without opinion*, 409

---

**8.** See the cases cited by Justice Stewart in his dissenting opinion in *Chapman v. Houston Welfare Rights Organization*, —— U.S. ——, 99 S.Ct. 1905, 1945, 60 L.Ed.2d 508 (1979). The issue of whether individuals may bring suit to secure compliance with the Social Security Act was not addressed in the majority opinion in *Chapman*. Justice Powell, joined by Chief Justice Burger and Justice Rehnquist, authored a concurring opinion suggesting that such suits may not be brought under Section 1983 and that previous statements to the contrary were either *dicta* or based on "uncritically" made assumptions. 99 S.Ct. at 1929. Both Justice White in his concurring opinion and Justice Stewart in his dissenting opinion, in which Justices Brennan and Marshall joined, emphatically replied that it is settled law that such a suit may be brought under Section 1983. 99 S.Ct.

at 1937–38 (White, J.); 99 S.Ct. at 1944–45 (Stewart, J.).

**9.** Appellees argue that appellants should not be able to advance this argument on appeal since their complaint did not allege Section 1331 jurisdiction pursuant to Section 1983. The complaint, however, did allege jurisdiction under Section 1331. Moreover, in their Memorandum of Law in Opposition to Defendants' Motion to Dismiss at p. 7, the appellants specifically referred to Section 1983 as authorizing the claims here in conjunction with Section 1331. Thus, appellants are clearly not foreclosed from advancing this same argument on appeal.

**10.** *See* DPW's Public Assistance Manual, Ch. 105. 62 Pa.Stat.Ann. § 483 provides sanctions for violations of such DPW regulations.

U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972) (North Carolina's decision to reduce total family payments under AFDC because of support payments made to one child was held to be improper *both* under 42 U.S.C. § 602(a)(7) *and* under the state's own regulations); *Banner v. Smolenski,* 315 F.Supp. 1076 (D.Mass.1970) (Partial summary judgment was granted on the basis that hearing actually given to those seeking additional AFDC payments did not meet, in certain specific respects, the standards of 42 U.S.C. § 602(a)(4) *and.* Massachusetts' "Handbook of Public Assistance Administration.")

These decisions support the sensible rule that a state's mere promulgation of a regulation does not eliminate the existence of a federal question where it is alleged that the state's actual practices do not conform with the requirements of the federal statute. To put the matter more bluntly, where a state violates federal law, it is no better off because it also violates its own law. Thus, we conclude that, in the words of *Lindy,* this action "requires the construction of a federal statute." *Lindy v. Lynn,* 501 F.2d at 1369. Since we have also decided that appellants seek a remedy granted by federal law, their confidentiality claim qualifies as one arising under federal law under both of the first two tests of *Lindy v. Lynn.* We, therefore, hold that the district court did have jurisdiction under Section 1331.[11]

### B. *Pendent Jurisdiction*

Appellants also assert that the court below had jurisdiction over their confidentiality claim as pendent to several of their constitutional claims. We agree that the confidentiality claim could properly be pended to their privacy claim. We, therefore, express no view as to whether any other claim would provide an adequate basis for pendent jurisdiction.

■ Pendent jurisdiction may be exercised when there is a federal claim with an independent jurisdictional basis that is of sufficient substance and that derives from the same "nucleus of operative fact" as the claim that is pended to it. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Appellants alleged:

Defendants' disclosure of information concerning recipients and former recipients and use of that information as the basis for suspending them from employment willfully and maliciously violates plaintiffs' rights to privacy protected by the First, Fourth, Ninth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

Complaint, paragraph 84.

■ This claim obviously derives from the same nucleus of operative fact as the statutory confidentiality claim and, if sufficiently substantial, the claim would clearly be cognizable under 28 U.S.C. § 1343(3) as an action to "redress the deprivation, under color of any State law, statute, ordinance,

---

11. The district court, in its opinion dismissing appellants' claims, stated that, if it had jurisdiction over the confidentiality claim, it "would be inclined to abstain from ruling on that claim in order to afford the state courts an opportunity to determine the proper application of the state statute and regulations to the defendants' alleged actions." Dt.Ct.Op., p. 6, Appellants' appendix, p. 32. The court did not state on what theory it considered abstention possible. Since the court did actually dismiss rather than abstain, we need not rule on whether it would have been proper to abstain. We note, however, that abstention in this context appears to be inconsistent with at least the spirit of certain Supreme Court pronouncements. For example, in *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), the court stated that, even where a state remedy is available, the federal remedy under § 1983 "is sup-plementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." The court has also stated, "[R]elief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy." *Damico v. California,* 389 U.S. 416, 417, 88 S.Ct. 526, 526, 19 L.Ed.2d 647 (1967) (per curiam), quoting, *McNeese v. Board of Education,* 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). Also, to the extent such abstention might be premised on the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), this court's analysis of the policies on which that doctrine is based indicates that abstention would not be appropriate in this context. *See New Jersey Education Association v. Burke,* 579 F.2d 764 (3d Cir. 1978), *cert. denied,* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1979).

regulation, custom or usage, of any right . . . secured by the Constitution of the United States."

The question, then, is whether the privacy claim is sufficiently substantial to serve as a basis for pendent jurisdiction. This court has recently recognized, "According to *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), a constitutional claim will support pendent jurisdiction if that constitutional claim is not 'wholly insubstantial,' 'obviously frivolous,' or 'no longer open to question.' " *Shands v. Tull*, 602 F.2d 1156, p. 1158 (3d Cir. 1979).

In *Shands*, the constitutional claim was that delays of longer than ninety days in the processing of administrative appeals violates the due process rights of claimants. Judge Rosenn, writing for the court, noted that the Supreme Court, in *Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), had explicitly stated that the extent of the duration of the administrative process was significant in determining whether due process standards were met.

Similarly, with respect to the instant claim, there is explicit language from the Supreme Court indicating that the issue in question has not been foreclosed and is not totally frivolous. In *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the court upheld a New York law requiring that information concerning every prescription of certain drugs be filed with the state health department. The Court, obviously concerned with the sensitivity and significance of the issues involved, closed with the following cautionary statement:

A final word about issues we have not decided. *We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files.* The collection of taxes, *the distribution of welfare and social security benefits*, the supervision of public health, the direction of our Armed Forces, and the enforcement of the criminal laws *all require the orderly preservation of great quantities of information, much of which is personal in character and potentially embarrassing or harmful if disclosed. The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures.* Recognizing that *in some circumstances that duty arguably has its roots in the Constitution*, nevertheless New York's statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the individual's interest in privacy. *We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data* —whether intentional or unintentional— or by a system that did not contain comparable security provisions.

429 U.S. at 605–06, 97 S.Ct. at 879 (footnote omitted; emphasis supplied). Thus, this case involves the issue that *Whalen* left open: Does the allegedly unwarranted disclosure of data, accumulated in order to facilitate the distribution of welfare benefits, violate privacy rights protected by the Constitution? In light of the concern that the Supreme Court has so recently expressed over this very issue, we hold that the constitutional privacy claim is not so "wholly insubstantial" or "obviously frivolous" as to prevent it from serving as a basis for pendent jurisdiction over the statutory confidentiality claim. Thus, the court below erred in concluding that it could not exercise pendent jurisdiction over this claim.[12]

---

12. District courts possess some degree of discretion in determining whether to exercise jurisdiction over pendent claims. Even where pendent *state* claims are involved, however, considerations of economy and convenience generally favor the adjudication of pendent claims where there is no resulting unfairness to the litigants. *See Hagans v. Lavine*, 415 U.S. 528, 546, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Mahone v. Waddle*, 564 F.2d 1018, 1025–26 (3d Cir. 1977); *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Gagliardi v. Flint*, 564 F.2d 112, 114–15 (3d Cir. 1977); *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d

## III. THE PROCEDURAL DUE PROCESS CLAIM

Appellants have alleged that the procedures utilized by the state in imposing the suspensions and terminations involved here did not comply with the requirement of due process. In addressing this claim, the district court assumed *arguendo* that appellants had a property interest in their employment with the state. The court went on to recognize that, under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the determination of what process is due requires a balancing of factors which in turn requires the type of factual record generally not available upon a motion to dismiss. The court determined, however, that the Pennsylvania Civil Service Act mandates essentially the same procedures as were upheld as meeting due process standards in *Arnett v. Kennedy*, 416 U.S. 134, 163, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

The district court erred, however, in overlooking the process that appellants allege they actually received. Appellants allege that the actual procedures utilized were significantly different from those provided in *Arnett* in at least three ways:

1. In *Arnett*, employees were entitled to notice of the charges against them thirty days prior to termination. According to the complaint, Louise B. received notice of her suspension on the day it became effective and Janie J. did not receive notice until the day after the effective date of her suspension.

2. The statement of reasons given in the initial notice in *Arnett* was considerably more detailed than that provided here.

3. In *Arnett*, employees were given an opportunity to respond to the charges against them prior to the effective date of the disciplinary action. Louise B. and Janie J. allege that they received no such opportunity.

In *Arnett* itself, Justice Powell, who was joined by Justice Blackmun (both of whose votes were necessary to form a majority) emphasized that the provision of 30 days' notice of the reasons for the proposed disciplinary action as well as the provision of an opportunity to respond to the charges before the action is taken were important factors in determining the adequacy of the overall procedural scheme. *See Arnett*, 416 U.S. at 170, 94 S.Ct. 1633. Thus, although *Arnett* certainly stands for the proposition that a full-fledged adversary hearing need not be provided prior to termination, it does not stand for the proposition that no opportunity to rebut charges need be given prior to the taking of disciplinary action. Indeed this court, in *Ross v. Horn*, 598 F.2d 1312 (3d Cir. 1979), relied on New Jersey's use of informal interviews prior to the making of fraud determinations in unemployment compensation cases in deciding that the state's procedures for making those determinations complied with the requirements of due process. Two circuits have specifically held that employees must be given the opportunity to rebut charges against them prior to being suspended. *See Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir. 1976), *vacated and remanded*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), *on remand*, 578 F.2d 1167 (5th Cir. 1978) (the remand was for reconsideration in light of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which is not relevant to the issue discussed here; on remand, two sections of the prior opinion,

1147 (1978). Where pendent *federal* claims are involved, the extent of a district court's discretion to refuse to exercise pendent jurisdiction is more limited since most of the factors that might weigh against exercising jurisdiction over state claims do not apply. Specifically, state-federal comity is not a consideration; there is no need to defer to state courts' expertise since federal courts have at least as much experience in deciding federal questions; and,

although federal decisions on state issue are, in effect, only tentative, federal decisions of federal issues suffer from no similar defect. *See Hagans v. Lavine*, 415 U.S. at 546–48, 94 S.Ct. 1372. Thus there appears to be little reason in most cases to refuse, as a matter of discretion, to exercise pendent jurisdiction over a federal claim especially when doing so would avoid the need to reach a constitutional issue.

not dealing with the issue here, were deleted and replaced); *Muscare v. Quinn*, 520 F.2d 1212, 1215 (7th Cir. 1975) (per curiam), *cert. dismissed as improvidently granted*, 425 U.S. 560, 96 S.Ct. 1752, 48 L.Ed.2d 165 (1976) (per curiam).

 Appellees argue that, according to Management Directive 505.19, employees were supposed to have been given an opportunity to respond to the charges against them before they were suspended. They contend, therefore, that the failure to provide such an opportunity constitutes only a "mistake," not a denial of due process. Appellees seriously miscomprehend the meaning of the right to due process of law. The fourteenth amendment prohibits the denial of property or liberty interests without the provision of at least those minimally adequate procedures that constitute due process. If a person is deprived of such a property or liberty interest without being provided those minimally adequate procedures, that persons's due process rights have been violated regardless of the reason for the omission. Thus, if due process requires the provision of a pre-suspension opportunity to respond to charges, the denial of such an opportunity, even if by mistake, constitutes a denial of due process.

[11] We conclude, therefore, that, on the basis of the allegations here, the district court must compile a factual record to determine what procedures were provided and what process is due according to the analysis outlined in *Mathews v. Eldridge*. We note that we, like the district court, have assumed that appellants were deprived of a liberty and/or property interest. We leave the initial determination of that issue to the district court.

Although we reverse the dismissal of the due process claims here, we wish to emphasize that this decision does not "handcuff" state authorities in their efforts to uncover welfare fraud and to take action against those who have improperly received public assistance payments. Vigorous efforts to protect the integrity of welfare programs are necessary to assure that the public's dollars go only to those whose real need qualifies them to receive this money. Our decision today does not reach the merits of appellants' claims.

## IV. CONCLUSION

For the reasons given above, we will reverse the dismissal of all claims other than those based on substantive due process (complaint, paragraph 86, Fourth Claim), and equal protection (complaint, paragraph 87, Fifth Claim) and remand for further proceedings consistent with this opinion. Costs shall be taxed against the appellees.

ROSENN, Circuit Judge, concurring

I concur in the result reached by the majority and its holding that plaintiffs' statutory breach of confidentiality claim arises under federal law for purposes of section 1331 jurisdiction. I write separately only to express my belief that it is unnecessary on this record to inquire into the issue of pendent jurisdiction and establish it as an alternative jurisdictional basis for this lawsuit.

The central claim in this case is that the defendants have violated the plaintiffs' statutory rights by breaching confidentiality regulations surrounding the disclosure of public assistance information. Judge Higginbotham correctly determines that this claim meets the tests laid down by this court in *Lindy v. Lynn*, 501 F.2d 1367 (3d Cir. 1974), for federal question jurisdiction under 28 U.S.C. § 1331(a). Majority Opinion, Part II A. However, having determined that plaintiffs are properly in federal court under section 1331, he proceeds in Part II B of his opinion to elucidate a pendent jurisdictional alternative to federal question jurisdiction. Judge Higginbotham sustains the plaintiffs' argument that the statutory breach of confidentiality claim may be pended to a not insubstantial constitutional privacy claim. Majority Opinion at 399. Although his analysis of pendent jurisdiction may be correct, I fail to see its relevance once federal question jurisdiction is established over the statutory claim.

If the plaintiffs' statutory breach of confidentiality claim arises under federal law for purposes of section 1331 jurisdiction, then the only instance in which it would be necessary for the district court to exercise pendent jurisdiction over it would be if the federal claim failed to meet the jurisdictional amount requirement of $10,000 in controversy. The present case is an appeal from a grant of a directed verdict in favor of the defendants in which they chose not to put in issue any question concerning the jurisdictional amount. Majority Opinion at 397 n.7. Hence, we must assume for purposes of this appeal that there is no impediment to the plaintiffs pursuing their federal claim under section 1331. If so, then it is unnecessary for the court to examine the substantiality of the constitutional privacy claim for jurisdictional purposes in order to pend the statutory claim to it.