No. 12-0775 - <u>Patricia Hudson v. Karen L. Bowling, Secretary, West Virginia Department of Health & Human Resources, and Stephen M. Baisden, State Hearing Officer, West Virginia Department of Health & Human Resources</u>

**FILED**

**November 6, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring:

I agree with the majority's reversal of the circuit court's order affirming the Hearing Officer's decision to uphold the DHHR's repayment claim against the petitioner for the overpayment of SNAP benefits. Having reviewed the record and the parties' arguments on appeal, I agree that the DHHR failed, in this particular case, in its burden to prove by a preponderance of the evidence at the administrative hearing that the petitioner and her husband were "living together" during the targeted repayment period. That said, I write separately to emphasize that the majority's opinion should not be read as discouraging or attempting to frustrate the DHHR's investigation and recoupment of SNAP benefit overpayments, which are critical to the fulfillment of the Congressional intent of these vital benefits.

SNAP benefits are intended "to promote the general welfare [and] to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011; *see also* 7 C.F.R. § 271.1(a). The overpayment of SNAP benefits, rather than furthering Congress's intent, results in an unwarranted

1

diversion of public funds that could be directed to qualified beneficiaries. In fact, Congress has directed that

> [e]ach State agency shall proceed against an individual alleged to have engaged in such activity either by way of administrative hearings, after notice and an opportunity for a hearing at the State level, or by referring such matters to appropriate authorities for civil or criminal action in a court of law.

7 U.S.C. § 2015(b)(2). Accordingly, Congress's intent and directive, as well as the public interest, are well-served through the DHHR's pursuit of the repayment of overpaid benefits, especially when the failure to recoup benefits that were erroneously paid results in a depletion of public resources. Indeed, "[v]igorous efforts to protect the integrity of [public assistance] programs are necessary to assure that the public's dollars go only to those whose real need qualifies them to receive this money." *Louis B. v. Coluatti*, 606 F.2d 392, 402 (3d Cir. 1979).

In this particular case, the DHHR fell short of its evidentiary burden and appears to have set its investigation off on the wrong foot through oversights in the infancy of the investigation.[1] Its investigation appeared cursory and starkly lacking in corroborative

---

[1]Having undertaken a thorough review of the record on appeal, the administrative hearing transcript reveals that the Department's investigator believed that the petitioner and her husband were "living together" based upon information provided by another Department employee who said that the husband "lived in the back." This belief led the investigator to pursue the repayment claim against the petitioner, whose SNAP benefits had been calculated based upon the petitioner being the sole person in her "household." The hearing transcript further reveals that at the time of the hearing, the investigator was completely unaware that

2

proof which could have been obtained with very little additional investigative effort.[2]

Moreover, the DHHR failed in ensuring that the petitioner received adequate notice and opportunity to challenge its investigation through the form of its notice and neglect in turning over the petitioner's file. As a result, I likewise concur in the majority's new syllabus points regarding the DHHR's obligation to provide the recipient with both adequate notice and his or her entire file, as well as the dismissal of the overpayment claim where the recipient is prejudiced by the failure of the DHHR to follow those safeguards. The majority's new syllabus points will ensure that the DHHR's investigatory efforts are not rendered for naught because the benefit recipient was not provided the required due process. The DHHR's investigatory efforts, in general, are to be applauded and encouraged despite the fact that those efforts were unsatisfactory in this particular instance.

---

the petitioner's husband had actually lived in a camper on the petitioner's property—at least for part of the repayment period. When questioned about the camper, the investigator conceded that he had not seen the Department's "case comment" referencing the fact that the husband lived in a camper, although the investigator admitted that he had access to the "case comments."

[2]For reasons that are unclear, the Department's investigation appeared to be restricted to largely documentary proof which, although certainly relevant and probative evidence, fails to provide any substance regarding the realities of the petitioner and her husband's living situation. For example, what might the investigation have revealed had the Department's investigator interviewed the petitioner's neighbors to inquire as to whether the petitioner and her husband were routinely seen in and about the petitioner's home during the relevant time period? This type of inquiry would appear to be particularly important in cases such as this, where the lives of the petitioner and her husband are unsurprisingly intertwined by virtue of their lengthy marriage, notwithstanding their current separation.

I would be remiss if I did not further highlight, as did the majority, that the insufficient investigatory efforts of the DHHR in the case below were unfortunately mirrored in the efforts of its attorney before this Court. The case at bar presented this Court with an opportunity to write in an area of the law that had not been previously addressed. Generally, in such a case, one would expect each side to file a well-researched brief containing a thorough discussion of the relevant law as it related to the party's respective position on the issues to be considered on appeal. For reasons that are not readily apparent, the DHHR chose, instead, to file a three and a half page summary response. While Rule 10(e) of the West Virginia Rules of Appellate Procedure allows a party to file a summary response in lieu of a full appellate brief, the summary response must still meet certain minimal requirements, as follows:

> Instead of a brief, the respondent may file a summary response . . . [which] **must** contain . . . appropriate citations to the record on appeal, exhibiting clearly the points of fact and law being presented and the authorities relied on . . . . A party who files a summary response is deemed to have consented to the waiver of oral argument.

(Emphasis added.). In contravention of this Rule, the DHHR's summary response fails to contain even a single citation to any legal authority or to the record. As a result, the DHHR disappointingly offered very little to support its position in this matter.[3]

---

[3]Notwithstanding the Department's waiver of oral argument by filing a summary response, the Department was allowed to present oral argument under Rule 20(d) of the appellate rules. Regrettably, oral argument did nothing to rehabilitate the Department's meager summary response.

Therefore, for the reasons set forth above, I respectfully concur in the majority's opinion and conclusions.